C. W. ROBINSON, Appellant, v. W. W. GRAY, Appellee.

Chattel Mortgage: RIGHT OF MORTGAGEE TO SELL BEFORE DEFAULT. Under a chattel mortgage authorizing the mortgagee upon default in payment of the mortgage debt, or "whenever said mortgagee or his assigns shall choose so to do," to take possession of the mortgaged property and sell the same at public or private sale, "to pay the amount due or to become due," the mortgagee may seize and sell the mortgaged property before default in the payment of the mortgage debt, or the breaking of any other condition. GIVEN, J., *dissenting*.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, JANUARY 26, 1894.

THIS is an action upon four promissory notes executed by the defendant, and an account for interest on a balance alleged to be due the plaintiff. The defendant, by his answer, denied indebtedness upon the account, and alleged that the promissory notes were fully paid by the seizure of certain property rights and credits of defendant under a chattel mortgage given to secure the payment of said notes. In another count of the answer the defendant alleges that the plaintiff maliciously and wrongfully seized, and converted to his own use, the property described in the chattel

mortgage, by reason of which wrongful acts the defendant was damaged in the sum of two thousand dollars actual damages, and one thousand dollars exemplary damages. The action was aided by an attachment, which was based upon the grounds that the defendant was about to dispose of his property with intent to defraud his creditors, and that the debt sued on was incurred for property obtained under false pretenses. The writ of attachment was levied upon certain real estate of the defendant. A levy was also made upon certain personal property. The defendant, by way of counterclaim, averred that the grounds upon which the attachment was procured were false, and that the plaintiff had no reasonable grounds for believing them to be true, but knew the same to be false and untrue, and that the same were made willfully and maliciously, by reason of which the defendant was damaged in the sum of two thousand dollars actual, and three thousand dollars exemplary, damages, for which judgment was demanded. This counterclaim was denied by the plaintiff. The cause was tried to a jury, and a verdict was returned for the defendant for five hundred and twenty-eight dollars and forty-eight cents. It was found specially by the jury that the attachment was wrongfully and maliciously sued out, and the seizure and sale of the property under the chattel mortgage was wrongful, and an allowance was made in the sum of five hundred and eleven dollars for damages for the wrongful suing out of the attachment. The plaintiff appeals.—*Reversed.*

*Blake & Mitchell* and *Frank Farrell* for appellant.

*Yeoman & Kenyon* for appellee.

ROTHROCK, J.—I. The matter of account involved in the controversy consisted of claimed balances due upon accounts of the plaintiff against the defendant. The

court instructed the jury that there was no evidence
authorizing a recovery of the interest claimed. It is
insisted that this instruction was erroneous. An ex-
amination of the evidence satisfies us that the instruc-
tion of the court as to this item of the claim was
correct.

II. It appears from the evidence that the plaintiff
is a wholesale lumber dealer, and that the defendant
was for several years a retail dealer in that line at
Lehigh, in Webster county, and that he made the
principal part of his purchases of lumber from the
plaintiff on credit. He did not make prompt pay-
ments for his purchases, and at times his indebtedness
to the plaintiff amounted to considerable sums. On
the eleventh day of June, 1891, the defendant executed
to plaintiff the four promissory notes upon which the
suit is founded. The aggregate amount of the notes was
one thousand, three hundred and sixty-eight dollars.
The first of said notes was made payable in thirty days,
the next on the ninth day of September, the next on
the ninth day of October, and the last on the eighth
day of November, in the same year. The mortgage
given to secure the payment of the notes was executed
on the same day. The property mortgaged consisted
of all of defendant's stock of lumber, and his books of
account, and the accounts contained in said books,
and all notes taken in settlement of said accounts.
The mortgage was recorded on the twelfth day of June,
and on the next day it was placed in the hands of the
sheriff of Webster county for foreclosure. The said
sheriff took possession of the property, and sold the
same at public sale, as provided in the mortgage. The
sale under the mortgage was made on the third day of
July, 1891, before any of the notes became due. It is
claimed by counsel for the appellee that there was no
authority given in the mortgage to foreclose the same

before it became due, and the court instructed the jury on this question as follows:

"It is conceded on the trial that on the eleventh day of June, 1891, defendant gave plaintiff his four promissory notes sued upon, which said notes were made payable at various dates in the future, from July 11 to November 8, 1891, and that, to secure the payment of said notes, defendant then and there made and delivered to plaintiff a chattel mortgage upon certain personal property, rights, and credits. It is also conceded that immediately or very soon after the giving of said mortgage, plaintiff proceeded to take possession of said property described therein, and to offer the same for sale, and did in fact make public sale of said property on the third day of July, 1891. Upon these admitted facts you are instructed that, under the terms of the mortgage given by the defendant, plaintiff had the right to take possession of the mortgaged property at any time he chose so to do, and no damages can be assessed against him in this action for such taking. He did not, however, have any legal right to sell said property before the debt secured thereby became due, and by such sale he became and is liable to account to defendant for the fair and reasonable value of the property so sold, without regard to the amount for which the sale was made."

That part of the mortgage which provides for its foreclosure is as follows: "And I, the said W. W. Gray, do hereby covenant and agree with the said C. W. Robinson that in case of default made in payment of the above mentioned promissory notes, or any part thereof, either principal or interest, and all taxes assessed against said property before any part thereof becomes delinquent, or in case of my attempting to dispose of, or remove from said county of Webster, the aforesaid goods, and chattels, or any part thereof, or

whenever the said mortgagee or his assigns shall choose
so to do, then, and in that case, it shall be lawful for
the said mortgagee or his assigns, by himself, or agent,
or any officer, to take immediate possession of said
goods and chattels wherever found, the possession of
these presents being sufficient authority therefor, and
to sell the same at public or private sale, or so much
thereof as shall be sufficient to pay the amount due or
to become due, as the case may be, with all interest
and taxes, costs, charges, expenses, and attorney's fees
pertaining to the taking, keeping, advertising, and
selling said property and the collection of this debt."
The instructions above quoted were evidently given in
reliance upon the case of *Bank v. Taylor*, 67 Iowa, 572.
The language employed in the mortgage which was
construed in that case was somewhat similar to the
provisions of the mortgage in the case at bar.    It
was held in that case, because the mortgage pro-
vided "that in case of failure to pay the amount
due hereon at maturity, or whenever the holder hereof
may deem himself insecure, then he may take said
property by virtue of this mortgage, and sell the
same at public auction,   *   *   *   and the proceeds of
said sale to be applied on said note," that "this provi-
sion, standing alone, would doubtless empower both
the seizure and sale of the property before the maturity
of the debt, if the holder considered himself insecure."
But it was further held that said clause in the mort-
gage should be construed with another condition of the
instrument, which was as follows:    "That, if this note
and mortgage shall be paid on or before the maturity
thereof, then this mortgage to be void," and the con-
clusion was reached that under the stipulation of the
mortgage in that case the mortgagee had the right
to take possession of the property before the debt
became due, but that, if he considered himself insecure,
he had not the right to sell the same to pay the debt

before the debt became due. It will be seen, from an examination of that part of the mortgage in the case at bar, that the provisions thereof are not the same as those in the cited case. In this case it is provided that the mortgagee may take possession of the mortgaged property whenever he "shall choose so to do." It may be conceded that this right or option to take possession of the property is not materially different from the mortgage in the cited case, which was an option to the mortgagee to take possession when "he may deem himself insecure." In both cases there is an absolute right to take possession of the property under the stipulations named. But in the case at bar there is the further provision that, after seizing the property, the mortgagee may "sell the same at public or private sale, or so much thereof as shall be sufficient to pay the amount due or to become due, as the case may be." How could it be possible to make a sale of the property, and pay the amount to become due, unless the sale was made before the amount becomes due? The authority given to sell as plainly provides that a sale may be had before the amount becomes due as if it had been so stated in exact language. There is no room for construction, as in the case of *Bank of Carroll v. Taylor*, 67 Iowa, 472.

In the case of *Wells v. Chapman*, 59 Iowa, 658, where the provisions of the mortgage as to the right to take possession of the property and sell the same were, in substance, like the mortgage in the case at bar, it was said that "under this stipulation the mortgagee had the right, whenever he should 'choose so to do' to take possession of the property, and foreclose the mortgage, whether the debt was due or not." It may be conceded that in that case the mortgagee did not take possession of the property, and sell it before the debt became due; but his right to do so was fairly involved in the question determined. In *Richardson v.*

*Coffman,* 87 Iowa, 121, this court followed the rule announced in the case of *Wells v. Chapman, supra.* In the case of *Richardson v. Coffman,* it appears that the mortgagee took possession of the property, and sold it, before the debt secured by the mortgage became due. Whatever may be thought now of the corectness of the rule in the case of *Bank of Carroll v. Taylor,* it appears to us very plain that it ought not to be applied in construing a mortgage which plainly provided, not only for possession, but for a sale, of the property, before the maturity of the debt. The consequences of holding that there may be possession, but no sale, are apparent. If the mortgage in such case be upon live stock, and the debt has a long time to run before maturity, such a procedure would be ruinous to the security, and a loss to both parties.

We discover no other error in the case. For the error above pointed out, the judgment of the district court is REVERSED.

GIVEN, J. (*dissenting.*)—I do not concur in the conclusion that the appellant had a right to sell the mortgaged property before the condition upon which it was conveyed was broken. The conveyance is upon the express condition that if the appellant paid each of the four promissory notes on or before maturity, and taxes before delinquent, the conveyance should be void. By the notes, time was given extending over several months, for the payment of the debt, and, by the mortgage, the appellee conveyed his property as security upon the condition named. To permit the appellant to sell the property, and apply the proceeds to the payment of the debt before due, is to deny to the appellee the time given him in which to pay the debt, and the privilege reserved to him in the contract, to redeem his property from the pledge by paying the debt at maturity.

The conclusion of the majority is based upon that clause in the mortgage providing that, whenever the mortgagee "shall choose so to do," he might take possession of the mortgaged property, and sell the same, "or so much thereof as shall be sufficient to pay the amount due or to become due." The conclusion is that this authorized the appellant to take possession of and to sell the property before default was made in paying the debt or taxes. The right to take possession is not questioned. That right is clear, under section 1927 of the Code, which provides that, in the absence of stipulation to the contrary, the mortgagee is entitled to possession. To take possession did not deprive the appellee of the time given for payment, nor of the right to redeem by payment at maturity. The fact that possession, and not sale, is provided for, emphasizes the distinction which I think exists. To me it seems clear that this clause, taken alone, does not authorize a sale before default in payment, and that such a right should not be inferred from the power to sell sufficient to pay the amount due or to become due. There were four notes falling due at different times, a failure to pay any of which at maturity would be a breach of the condition, and in that case the holder of the mortgage had the right to sell sufficient to pay that which was to become due, as well as that which was already due, because of the breach.

If it may be said that, taken alone, this clause does authorize a sale before condition broken, still it seems to me that, when considered in connection with the other provisions of the mortgage, it should not be so construed. We may not ignore any part of the instrument in giving a construction to it, but, taking the whole together, arrive at the intention of the parties. Construing the language conferring power to sell in connection with the time given to the appellee in which to pay the debt, and the right to redeem his property

by payment at maturity, I am convinced that it was not mutually understood or intended that the appellant might, at his own option, and without cause, sell the property before default in payment, and thereby deprive appellee of the time allowed in the contract for payment and redemption. It may be that, had the appellee attempted to dispose of or remove the property from the county, appellant, having seized it, might sell it before the debt was due. But no such cause for the sale is alleged or proven; hence that question is not in the case. If causes arose requiring a sale of the property before default in payment, whether or not such causes were named in the mortgage, a court of equity would authorize a sale. If, by reason of the perishable nature of the property, or other cause, the security would be impaired by delaying a sale thereof until the maturity of the debt, the appellant's remedy was ample in a court of equity. It may be said that it is a hardship to hold him to that remedy; but surely not so great a hardship as to deny to the appellee, without cause, the time accorded him by the contract in which to pay his debt and redeem his property. The appellant could not sue upon these notes before maturity without other cause than his arbitrary will, nor could he have a decree foreclosing this mortgage; yet it is held that he may, at his own option, do for himself what the courts would not do for him, that he may not only compel payment of the notes before any of them are due, but may forever put it beyond the power of the appellee to redeem his property according to the contract. I see no distinction in principle between this case and *Bank of Carroll v. Taylor*, 67 Iowa, 572. A like discretion is given to the mortgagee in both cases, and the law announced in that case is supported by reason and the current of authorities. Cases will be found, from states not having a statute like our section 1927, wherein the right to take possession before default

is considered, and, in connection therewith, the right
to sell; but in none of them, so far as I have been able
to discover, is it held that a mortgagee may sell the
property without cause, at his own option, before con-
dition broken. *Wells v. Chapman* does not seem to me
to be in conflict with *Bank v. Taylor.* The question
certified was whether the mortgagor, he being in pos-
session, had any interest in the mortgaged property
subject to execution. This court held that, as the
mortgagee had the right to take possession whenever
he chose, "and foreclose the mortgage, whether the
debt was due or not," there was no interest left in the
mortgagor subject to execution. This decision is
grounded on the right of the mortgagee to take pos-
session and sell, but not upon the right to sell before
default. The right to sell after default extinguished
all interest in the mortgagor, subject to execution, as
effectively as would the right to sell before. *Richard-
son v. Coffman,* 87 Iowa, 121, follows *Bank of Carroll v.
Taylor,* but does not, as I view it, decide the question
under consideration. After remarking upon the disa-
greement in the adjudicated cases as to the right to
take possession, *Wells v. Chapman* is referred to as
"the only case we have been able to find where the
provision in the mortgage for taking possession is like
that in the case at bar. It was held that the mortgagee
might seize the property whenever he elected so to do,
whether the debt was due or not. That case is decisive
of this question." An examination of the further
statements in the opinion will show that the right to
take possession and to sell for good cause was the sub-
ject under consideration, rather than the right to sell
without cause, at the option of the mortgagee. To me,
this case furnishes an apt illustration of what I believe to
be the error in the conclusion of the majority. By that
conclusion the mortgagee is sustained in seizing the
mortgaged property on the second day after the mort-

gage was given, and proceeding at once to sell the same, without cause or excuse, in payment of a debt for which he had extended credit running over several months.. I can not think that the sanction of the law should be given to such arbitrary and unconscionable acts.