K. KOSTER, *et al.*, v. CHARLES SENEY, Appellant.

**Appeal:** DENIAL IN ABSTRACT: *Stipulation.* A stipulation for a submission of a case on appeal on the two abstracts filed, waiving a transcript, does not authorize the court to review questions of 1 fact, when the additional abstract filed by appellee states that all the evidence is not contained in the abstract, which statement is not denied.

**Foreclosure of Chattel Mortgage:** CONSTRUCTION OF MORTGAGE. A chattel mortgage provided that it should be void upon payment of the notes secured, according to their tenor. It also gave the mortgagee authority to take possession at any time, whether the 2 debt was due or not, and "to sell at public auction sufficient of the same to pay the debt." *Held,* while the mortgagee might take possession at any time, he could not *sell* until the mortgage debt or some part of it became due.

ROBINSON, J., dissenting.

*Appeal from Franklin District Court.*—HON. B. P. BIRDSALL, Judge.

WEDNESDAY, JANUARY 20, 1897.

ACTION at law to recover damages for alleged breaches of warranty in the sale of personal property, and to recover actual and exemplary damages for the wrongful conversion of personal property. There was

a trial by jury, and a verdict and judgment for the plaintiffs. The defendant appeals.—*Affirmed.*

*J. W. Luke* and *D. W. Dow* for appellant.

*E. P. Andrews* and *W. D. Evans* for appellees.

DEEMER, J.—The petition contains three counts, and sets out three causes of action, substantially as follows: The first count alleges that on or about the first day of January, 1894, the plaintiffs, K. Koster and P. Koster, were, and for a long time had been, the owners of four horses, particularly described, one set of work harness, and about two hundred and fifty bushels of corn; that on or about the date specified, the defendant did wilfully, wrongfully, and maliciously, for the purpose of depriving the plaintiffs of the ownership of said property, and with intent to injure, oppress, and defraud them, take possession of said property, and wilfully, wrongfully, and maliciously convert it to his own use. The second count states that in March, 1893, the plaintiffs purchased two horses of the defendant, who warranted them to be nine years old; that the warranty was relied upon by the plaintiffs in making the purchase, and known to be false by the defendant. The third count states that in March, 1893, the plaintiffs purchased a horse of the defendant, who warranted him to be sound, and that the plaintiffs relied upon that warranty; that before delivery of the horse was made, the plaintiffs discovered that the horse was sick, and refused to accept him; that thereupon the defendant represented and warranted that the ailment was temporary, and that the horse would recover, but that, if he did not, the defendant would refund the price paid for him; that the horse was then accepted, but was in fact sick of a fatal disease, and died soon after he was

received by the plaintiffs. Judgment is demanded for actual damages to the amount of eight hundred and ten dollars, and for exemplary damages in the sum of two thousand one hundred dollars. The answer contains a general denial, and alleges as an affirmative defense that in March, 1893, the plaintiffs executed and delivered to the defendant a chattel mortgage on the property described in the first count of the petition to secure the payment of two promissory notes, one of which was for the sum of seven hundred and twenty-two dollars and seventy-five cents, payable on or before October 1, 1893, and the other was for the sum of two hundred and fifty dollars, payable on or before October 4, 1894, with interest at the rate of eight per cent. per annum; that on the eighteenth day of December, 1893, the sum of twenty-seven dollars and ninety-one cents remained due on the first note, and nothing had been paid on the other; that the defendant had been credibly informed that the plaintiffs had sold some of the mortgaged property without his knowledge or consent, with intent to defraud him, and that on the day last specified he placed the mortgage in the hands of the sheriff, as his agent, to take possession of enough of the mortgaged property to pay the amount due on the first note, and costs and expenses; that thereupon the sheriff took possession of about two hundred bushels of corn, the value of about forty dollars, and afterwards, at the request of the plaintiffs, took possession of the four horses and one set of harness, described in the first count of the petition, and in January, 1894, sold all of the property so taken, and indorsed the proceeds on the two notes. In other divisions of the answer the defendant pleads the making of the notes and the execution of the mortgage by the plaintiffs, and the foreclosure of the latter according to the authority which it conferred, and admits the sale of the

horses to the plaintiffs, including those described
in the petition; but alleges that the contract of
sale was in writing, and did not contain the warran-
ties claimed by the plaintiffs, and that one hundred
and twenty-five dollars of the contract price are unpaid.
The plaintiffs filed a reply which admitted the exe-
cution of the larger of the two notes, but averred
that the amount thereof was never due.     Sev-
eral items which went to make the consideration
of the note were set out and alleged to be errone-
ous, and among them was one of eleven dollars,
which it is alleged was for twelve numbers in a certain
lottery or raffle in which the defendant sold numbers
to several persons, and by which he proposed to raffle
off a certain piano, which was to be the property of
the holder of the winning number, to be determined
by chance: that the raffle has never taken place; that
the defendant retains the piano, and that the plaintiffs
have never received any consideration for the item.
The jury returned a verdict in favor of the plaintiffs
for the sum of eight hundred and seventeen dollars
and four cents, and found specially that three hundred
and seventeen dollars and four cents were due on the
first count of the petition, and that the plaintiffs were
entitled to five hundred dollars as exemplary damages.

I.   Interrogatories were submitted to the jury
asking if they found any damages on the causes of
action set out in the second and third counts of the
petition, but were not answered, and from this fact,
and the special findings returned, it is clear that the
jury found in favor of the defendant on the second
and third counts, and that the only questions involved
in this appeal are those which grow out of the
first count.  The appellees have filed an addi-
tional abstract, which denies that the abstract
of appellant contains all the evidence introduced on
the trial, and states that the two abstracts together

do not contain all the evidence introduced and heard. That it is not denied, and must be taken as true. *Goode v. Stearns*, 82 Iowa, 710 (47 N. W. Rep. 893); *Hopkins v. Railway Co.*, 94 Iowa, 752 (64 N. W. Rep. 603). Moreover, the abstract of the appellant shows affirmatively that the bill of exception was not filed within the time fixed by order of the court and the agreement of parties, and it does not appear that any evidence was made of record. A stipulation of the parties which provides for the submission of the cause on the two abstracts, and waives a transcript of the record, has been filed. But that does not answer the purpose of a denial of the additional abstract, nor show that the two abstracts contain all the evidence upon which the case was heard. In view of the condition in which the record appears, we cannot determine any question which requires an examination of the evidence, and as the appellees have not filed an argument, we will follow our practice in such cases, and consider only those questions which seem to be of controlling importance.

II. The court, in referring to the mortgage and two notes which it was designed to secure, charged the jury as follows: "You are instructed, that under the mortgage defendant had the right to take possession of all the property therein described, at any time he chose to do so, and no damage could be assessed against him for such taking. He did not, however, have any right to sell said property before the debt secured thereby became due. In other words, while he would have a right, under said mortgage, to take possession of all the property therein described, for the purpose of preserving the same until the debt became due, he would have no right to sell said property unless the debt secured by said mortgage, or some part of it, was due; and, if he did sell said property, or any part of it, before the debt

secured thereby became due, or any part thereof, then he is liable to account to the plaintiffs for the fair and reasonable value of the property so sold, without reference to the amount for which the sale was made." The appellant insists that, so far as this portion of the charge denied the right of the mortgagee to sell the mortgaged property for the portion of the debt not due, it was erroneous. The condition of the mortgage is that, if the mortgagors shall pay to the mortgagee the two notes described, "according to the tenor thereof, then these presents to be void; otherwise in full force." The mortgage also contains the following provision: "And I, the said K. Koster & Sons, do agree with the said Charles Seney, that these presents shall be his sufficient authority to take immediate possession of said goods and chattels at any time he may choose, and to sell at public auction sufficient of the same to pay the debt, with all reasonable costs and attorney's fees; the balance of the proceeds to be accounted for to the mortgagor on ·demand." This gave to the mortgagee the right to take actual possession of the mortgaged property at any time he elected to do so, whether the debt it was designed to secure was due or not; but did it give him the right to sell before maturity of the notes which it was given to secure? It seems to us that to so hold would not only render nugatory some of the express language of the instrument, but also give to it a meaning the parties never intended. The condition of the mortgage was: "That if said Koster & Sons shall pay to said Chas. Seney, his heirs and assigns," etc., "his two promissory notes dated March 1st, and described as follows, to-wit: One for $722 and 75-100, payable October 1, 1893, and one for $250, payable October 1 1894, with interest at the rate of 8 per cent. per annum, according to the tenor thereof, then these presents to be void; otherwise in full force." By the express

terms of the instrument the debt was not to become due until the maturity of the notes. According to appellant's contention, the condition permitting sale by the mortgagee authorized him to sell at any time, and to cancel the indebtedness, whether matured or not. We do not think this is a correct construction of the instrument. Authority to sell to pay a debt does not ordinarily contemplate a sale before the debt is due, and it should not be held to do so when conferred upon a mortgagee, as in this case, excpt that such construction be the only reasonable and consistent one to be deduced. If appellant's contention should be adopted, it would not only deprive the mortgagor of his equity of redemption, but it would also change the maturity of his notes, and make them payable upon demand. This identical question was determined by this court adversely to appellant in the case of *Bank v. Taylor*, 67 Iowa, 572 (25 N. W. Rep. 810), and this extract from the opinion in that case is peculiarly applicable here: "In determining the effect of the instruments, both conditions must be considered, and when they are considered together we think that, while they empower the holder to take possession of the mortgaged property before the maturity of the debt, if he deemed himself insecure, they did not empower him to sell it until after after its maturity, for the mortgagor's equity of redemption did not expire until the maturity of the debt. The debt evidenced by the instruments was not subject to be diminished before its maturity, and there is no uncertainty as to the amount to be recovered thereon at maturity." Nothing need be added to this language of Reed, J., as it seems to be conclusive. It is said, however, that this case has been overruled by the later case of *Robinson v. Gray*, 90 Iowa, 699 (57 N. W. Rep. 614). But not so, we think. The case is not expressly overruled by this later one. On the contrary,

it is carefully and clearly distinguished, and it is manifest, we think, that there was no intention to overrule it. The condition in the *Robinson-Gray Case* was as follows: "* * * Whenever the said mortgagee shall choose so to do, then, and in that case, it shall be lawful for the said mortgagee * * * to take immediate possession of said goods and chattels, * * * and to sell the same, * * * or so much thereof as shall be sufficient to pay the amount due, or to become due, as the case may be, with all interest, taxes," etc. Here was not only authority to sell to pay the debt according to its terms, but to sell to pay the debt, whether due or not. As said by Rothrock, J., in the *Robinson Case*, "It will be seen from an examination of that part of the mortgage in the case at bar, that the provisions thereof are not the same as those in the cited case." *Bank v. Taylor.* After remarking that the provisions in regard to taking possession are the same in the two cases, Judge Rothrock continues: "But in the case at bar there is the further provision that, after seizing the property, the mortgagee may 'sell the same at public or private sale, or so much thereof as may be sufficient to pay the amount due, or to become due, as the case may be.' How could it be possible to make a sale of the property, and pay the amount to become due, unless the sale was made before the account becomes due? The authority given to sell, as plainly provides that a sale may be had before the amount becomes due as if it had been so stated in exact language. There is no room for construction, as in the case of *Bank v. Taylor*." Nothing further need be said to show that the case of *Bank v. Taylor* was not overruled in the *Robinson-Gray Case*. From the dissenting opinion of Given, J., it also appears that the *Taylor Case* was fully considered, and that there was no intention on the part of the majority of the court to overrule it.

For the reasons stated, the instruction complained of was not erroneous.

III. It is claimed that other paragraphs of the charge were erroneous, as applied to the facts in the case. As the evidence is not before us, we cannot determine whether the claim thus made is well founded. Other questions discussed cannot be considered for the same reason. There is no prejudicial error in the record, and the judgment is AFFIRMED.

ROBINSON, J. (dissenting).—I cannot agree to the interpretation of the mortgage in controversy, adopted in the opinion of the majority. It is not claimed that the mortgage was obtained by fraud, nor that it does not correctly represent the contract of the parties. Therefore its terms should be controlling. The opinion of the majority holds, correctly, as I think, that the stipulation in regard to the foreclosure of the mortgage "gave to the mortgagee the right to take actual possession of the mortgaged property at any time he elected to do so, whether the debt it was designed to secure was due or not," but holds that it did not give him the right to sell the property before the maturity of the notes. The mortgage was given on the seventeenth day of March, 1893. The first note it secured was due October 1, 1893, and the second one a year later. Therefore, according to the rule of the opinion of the majority, the mortgagee might have taken possession of the mortgaged property in March, 1893, and held it at the cost of the mortgagors more than a year and · a half before selling it. The mortgaged property consisted of five horses, one set of harness, and crops to be raised in the years 1893 and 1894. Only four horses are in controversy, and their respective values are stated in the petition to be one hundred and twenty-five dollars, one hundred and fifteen dollars, thirty dollars,

and twenty-five dollars. A condition which would permit the mortgagee to deprive the mortgagor of the use of such property for a year and a half, and charge him the reasonable cost of keeping it during all that time, is, on the face of it, so unreasonable, as to challenge investigation. It was well said in *Robinson v. Gray*, 90 Iowa, 705 (57 N. W. Rep. 616), that: "The consequences of holding that there may be possession, but no sale, are apparent. If the mortgage in such case be upon live stock, and the debt has a long time to run before maturity, such a procedure would be ruinous to the security, and a loss to both parties." So, in this case, to construe the mortgage to permit the mortgagee to take and hold the mortgaged property for a year and a half before selling it, would be to give him a power to harass the mortgagor and destroy the value of the mortgaged property by consuming it in the payment of costs, which he should not have unless clearly required by the terms of the contract. Such a contract could be made a mere instrument of oppression. The mortgage construed in *Robinson v. Gray* and in *Wells v. Chapman*, 59 Iowa, 660 (13 N. W. Rep. 841), authorized a sale of the property "to pay the amount due or to become due, as the case may be," while the mortgage involved in this case authorized a sale "to pay the debt." In my opinion, these provisions are, in legal effect, precisely the same. The word "amount," used in the first two, standing alone, is not the equivalent of the word "debt;" but the phrase "the amount due," or "to become due," as used, is the exact equivalent of the word "debt," as used in the mortgage in controversy. The debt of that mortgage is represented by the two notes which it was given to secure, and had an existence from the time they were given. An obligation to pay a sum of money is none the less a debt because it is not due. *Scott v. City of Davenport*, 34 Iowa, 213. The true

interpretation of the contract in question appears to me to be as follows: Payment of the notes, according to their tenor, would have made the mortgage void; but the mortgagee was not obliged to wait for either note to mature. He could, at his option, take possession of and sell the property at any time, and make the notes payable at any time to the extent of the amount realized from the sale, if it did not exceed the sums due on them. While such a contract as that may be improvident, yet it appears to be much less objectionable than the one which the opinion of the majority holds was made. The interpretation for which I contend appears to me to be fully sustained by the cases of *Robinson v. Gray,* and *Wells v. Chapman, supra.* See, also, *Richardson v. Coffman,* 87 Iowa, 124 (54 N. W. Rep. 356); *Cole v. Shaw* (Mich.) 61 N. W. Rep. 869. It is true that the case of *Bank v. Taylor,* 67 Iowa, 572 (25 N. W. Rep. 810), may be regarded as authority for a different conclusion, but it appears to me to be in conflict with *Wells v. Chapman, supra,* and to have been overruled in effect by *Robinson v. Gray, supra,* and to be in violation of well established rules of interpretation. True, the last-named case does not overrule the *Taylor Case* in terms, and it refers to some verbal differences between the instruments construed in the two cases, but the rule of the *Taylor Case* was not approved, and it was referred to in terms which may well be regarded as implying doubt as to its correctness. The interpretation for which I contend, appears to me to be required by the language of the mortgage in question, and to be much more reasonable and beneficent than the other. Its practical operation, in most cases, would secure a larger amount from the sale of the mortgaged property, to apply on the mortgage debt than would be obtained under the rule of the majority. An honest mortgagee may find it necessary to

take possession of the property pledged as security to preserve it from waste, or wrongful conversion, by the mortgagor, yet under the rule of the majority opinion he may be compelled to keep it until the cost of maintenance has consumed a large share, if not all, of its value, and to that extent all parties in interest be deprived of benefit from it.   My opinion is that the district court erred in its charge to the jury, and that the judgment should be REVERSED.