THE PHELPS, DODGE & PALMER COMPANY v. C. C. SAMSON, Sheriff, ET AL., Appellants.

113  145
120  508
113  145
126  147
113  145
130  392

**Sale: WHEN MADE:** *Acceptance.* Where a buyer, on June 10th, ordered goods alleged to have been purchased fraudulently, but the order was not accepted nor the goods shipped until a later date, an instruction which stated the later date as the time of the sale was proper.

**Innocent Purchasers: FAILURE TO PART WITH NEW CONSIDERATION.** Mortgagees who take their mortgages on goods to secure preexisting debts, without extending time or payment, or parting with any other consideration, are not innocent purchasers.

**Fraudulent Purchase: RELEVANT EVIDENCE:** *Opinion evidence* The fact that a buyer of goods had on hand at the time of a purchase, alleged to have been fraudulent, a much larger stock than the trade of his locality would justify was relevant to the issue of fraud in the purchase, and testimony of witnesses as to the value of the usual stock carried in such a place, though a species of opinion evidence, was properly admitted, this being the only way to elucidate the point.

VOL 113 Ia—10

INSOLVENCY: *How shown.* Where the seller of goods alleged that the buyer had falsely represented himself as solvent at the time of the sale, the value of the buyer's stock at that time was material, and hence admissible in an action by the seller to recover the goods.

INSOLVENCY DEFINED. An instruction that insolvency was inability to pay bills as they matured in the ordinary course of business was not objectionable as an improper definition of insolvency.

EVIDENCE OF INTENT. Where a buyer was alleged to have fraudulently purchased goods without intent to pay for them, an instruction that the jury should determine such intent, not from the buyer's statements alone, but from the amount of his indebtedness the amount of the goods ordered, the time of payment, his income, and all surrounding facts; properly stated the real issue and left its determination to the jury.

IMPLIED REPRESENTATIONS OF BUYER: *Rescission.* A buyer, in giving his order and receiving the goods, impliedly represents that he intends to pay for them, and is guilty of fraud if he intends not to pay; and hence an instruction that, if a buyer fraudulently represented that he was solvent, the sale could be rescinded, was proper, though there were no express representations of solvency or intention to pay.

Stating Issues:   HARMLESS ERROR.   Where two defendants filed separate answers, which tendered identical issues, the court's failure to adivse the jury that the answers were separate, and not joint, was not prejudicial.

Review on Appeal:   ASSIGNMENT ON RULING ON MOTION: *Motion having several grounds.* Where a motion to direct a verdict for defendant was based on nine distinct grounds, a general assignment that the court erred in overruling such motion is not sufficiently specific, and hence will not be considered on appeal.

SAME. Where a motion for a new trial was based on numerous grounds, a general assignment that the court erred in overruling the motion was insufficient to authorize review on appeal.

*Appeal from Kossuth District Court.*—HON. W. B. QUARTON, Judge.

FRIDAY, JANUARY 25, 1901.

ACTION to recover the possession of specific personal property. The defendant Samson claims to hold the property as agent of two of his co-defendants, who are mortgagees thereof, holding chattel mortgages thereon executed by defendant Seiler, who purchased the same from plaintiffs. The defendants other than Samson and Seiler are the mortgagees referred to, and they plead their mortgagers as prior to plaintiff's claim. Plaintiff alleges that the mortgages were without consideration, fraudulent and void, and part of a general assignment for the benefit of creditors void by reason of preferences given. It is claimed that, while plaintiff sold the goods to Seiler, the mortgagor, yet at the time of sale he (Seiler) was insolvent, and unable to pay therefor, that he fraudulently represented he was solvent and able to pay for the same, and that he purchased with intent not to pay for the property. On these issues the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*T. J. Sullivan* and *Sullivan & McMahon* for appellant.

*Clark & Cohenour* and *Wert Miller* for appellee.

DEEMER, J.—During the year 1897 plaintiff sold and delivered to defendant Seiler certain boots and shoes of the aggregate value of $207.60. After Seiler obtained the goods and placed them with his other stock, he mortgaged the whole to his co-defendants the Waterloo State Bank and Ed Croak; to secure a pre-existing indebtedness due each of the mortgagees. Plaintiff claims that defendants Seiler falsely and fraudulently represented that he was solvent and able to pay for the goods, whereas in truth and in fact he was insolvent; and that when he purchased he (Seiler) did not intend to pay for the goods. Seiler did not appear, and during the course of the trial judgment was rendered against him by default. The issues tendered by the other

defendants have been stated with sufficient fullness, and need not be repeated. To sustain its contention, plaintiff offered several witnesses to prove the value of the stock owned by Seiler at the time he purchased the goods of plaintiff, and was also allowed to prove by these same witnesses the value of the usual and customary stock of boots and shoes kept by an exclusive boot and shoe dealer in towns the size of Whittemore, where Seiler was engaged in business. The value of the stock at the time Seiler purchased the goods of plaintiff was certainly a material inquiry, and, as each and all of the witnesses called to fix that value stated they had some knowledge thereof, their testimony was admissible. The fact that Seiler had on hand, when he made the purchase in question, a very much larger stock than the legitimate demands of trade in the locality where he was doing business would justify, was also relevant to the issue of fraud ,and any proper and competent evidence tending to show that fact was admissible. The witnesses called each and all stated that they were familiar with the size of stocks usually carried in towns the size of Whittemore. Having thus qualified themselves, they were permitted to state the value thereof. In this there was no error. The fact was, as we have seen, relevant to the issue of fraud; and it could only be proven by witnesses who were familiar with such matters. It was not a matter of common knowledge. The ordinary person has little or no information on the subject. Men who are familiar with such matters do have this knowledge. It comes to them by reason of experience and observation along their particular lines of trade. Evidence as to the value of stocks usually carried in towns of a particular size is a species of opinion evidence that is admissible from the very necessities of the case. The weight of such evidence is for the jury, that at the suggestion of counsel or by direction of the court will no doubt make an allowance for mistakes of judgment on the part of the buyer, and all other facts and cir-

cumstances tending to negative the idea that the overstock-, ing was with fraudulent intent. Evidence as to value of the stock and as to the value of the usual and ordinary stock carried in such a place was properly admitted.

II. At the conclusion of plaintiff's evidence defendants moved for a verdict. This motion was based on nine distinct grounds. They assign the overruling of the motion as error. This assignment is not sufficiently specific, and cannot, therefore, be considered. *Hamilton Buggy Co. v. Iowa Buggy Co.,* 88 Iowa, 368; *Sisson v. Kaper,* 105 Iowa, 599; *Shakman v. Potter,* 98, Iowa, 61.

III. It is said that the court failed to state the issues in its charge to the jury, in that it neglected to advise them that defendants Croak and the Waterloo Bank filed separate answers. This is a hypercritical objection, entirely devoid of merit. The answers, although separate, tendered identical issues, and no prejudice resulted from stating they were joint. The complaint made of instruction No. 3 is without merit. Construed with instruction No. 2, immediately preceding, it was sufficiently specific, and could not have misled the jury. Instructions 5 and 8, so far as material, read as follows: "(5) If you believe from the evidence that on or about the 14th day of July and the 1st day of September, 1897, Adam Seiler was engaged in the boot and shoe business at Whittemore, Iowa, and that at said times the said Adam Seiler was insolvent, and that at said times he did purchase of the plaintiff any part or all of the goods sued for in this action, and that at the time of making the purchase of said goods the said Adam Seiler knew that he was insolvent and unable to pay therefor, and that the said Adam Seiler purchased said goods from the plaintiff with the purpose and intention not to pay therefor, and for purpose of defrauding the plaintiff out of said goods, then you are told that as a matter of law the plaintiff would be entitled to re-

cover such goods as you find from the evidence these defendants had in their possession at the time of the commencement of this suit, and were delivered to said Adam Seiler under the purchases mentioned in this instruction." "(8) In considering the question as to whether or not Adam Seiler bought the goods with the intention and purpose of defrauding the plaintiff, you are told that there are in law certain matters which are sometimes termed 'badges of fraud'; that is, matters which, if shown, are usually considered as evidence tending to show fraud. Among these are unusual or extraordinary methods of conducting business, if shown. Any secrecy or concealment in said business, if shown, or any other unusual methods or acts connected with the transaction in question, if shown by the evidence, are proper to be considered when deciding whether fraud in fact existed in connection with the transaction. As applied to this case, if Adam Seiler, by his acts prior to or at the time of the sale, intentionally induced plaintiff to believe that he intended to pay for the goods, and said Seiler in fact did not intend to pay therefor, and the said Seiler induced this belief intending to deceive the plaintiff and induce it to sell the goods to him, and the plaintiff was thereby deceived, and was induced by this misrepresentation to make the sales, and would not have made them if defendant had not made this misrepresentation, then the debt was created by fraud of said Seiler, and the plaintiff would be entitled to recover, provided you find that said Seiler was at the time of the sale insolvent." Five is complained of because it is said that Seiler purchased the goods June 10th, and not at the time stated in the instructions. It is true, he gave the order June 10th, but the order was not accepted and the goods shipped until the time stated in the instruction; hence there was no error. See *Kearney Milling & Elevator Co. v. Union Pac. Ry. Co.*, 97 Iowa, 719. The eighth instruction is said to be errone-

ous because there is no evidence to sustain it, and no such issue as is referred to therein is made by the pleadings.

There is no evidence, it is true, of any express representations made by the defendant regarding his solvency or of his intent to pay for the goods; but in giving his order and receiving the goods he impliedly represented that he intended to pay for them, and, if he had a secret intent not to pay, this was such a fraud on the seller as would justify a rescission of the sale. *Starr v. Stevenson,* 91 Iowa, 684; *Oswego Starch Factory v. Lendrum,* 57 Iowa, 575. The instruction explicitly refers to such representations, and was an accurate statement of the law applicable to such cases. It seems to be based on the language used in the *Oswego Starch Co. Case, supra,* and was not erroneous. No property statement was required, nor was there any express representation as to solvency, but the instruction did not assume that either of these things existed. It referred simply to the implied representation growing out of the purchase and sale of the goods. In the ninth paragraph of the charge the jury was told that, if Seiler was insolvent when he purchased the goods—that is, was unable to pay his bills as they matured in the ordinary course of business—such fact should be taken into account in determining the real issue of intent to pay for the goods; that it was not what Seiler said his intent was, but, taking all the evidence on the subject, including his statement, the jury should determine that issue; and that "in determining this question you should take into consideration the amount of indebtedness which he then had, the amount of goods which he was ordering, the length of time and terms upon which payments were to be made, his income from the business and other sources, if any, and from all these circumstances, and all other surrounding facts and circumstances proven upon the trial, determine the question." This instruction is criticised because there was no evidence to support it, because it invaded the province of the jury, and because it improperly

defined insolvency. None of these objections are tenable. Insolvency was properly defined, the real issue was stated, and the question of fact was left to the jury.

IV. Error is assigned on the overruling of defendant's motion for a new trial. The motion was based on 27 grounds, and the assignment is general. Under repeated decisions this is insufficient. That a wrong construction may not be placed on this opinion, it is proper to say that the defendant mortgagees took their mortgages to secure pre-existing debts. They neither extended time of payment nor parted with other thing of value when they received their mortgages, and consequently cannot be treated as innocent purchasers. *Starr v. Stevenson, supra.* The claim that the verdict is without support in the evidence has no sufficient assignment of error on which to res; and that question is not considered. No prejudicial error appears, and the judgment is AFFIRMED.