H. T. SYLVESTER, Appellee, v. J. E. AMMONS, and A. W. MITTERER, Appellants.

**Chattel mortgages:** INCONSISTENT PROVISIONS: RIGHT TO FORECLOSE. 1 The written portions of an instrument will control the printed provisions where the same are inconsistent, so that where it appeared from the terms of a note and chattel mortgage covering a stock of goods, that the mortgagor reserved the right to handle the same in the regular mercantile way and that the indebtedness should be paid from the sales of the stock, a printed provision that the mortgagee might take possession whenever he chose, was inoperative.

**Replevin by mortgagor:** PLEADINGS. In the recovery of personal property claimed to have been wrongfully taken under a mortgage, it 2 is competent to allege and prove that the mortgage was procured by fraud, and that it is without consideration.

**Replevin:** COUNTERCLAIM. An independent cause of action cannot be 3 pleaded in a replevin action either as a counterclaim or otherwise as a defense.

**Fraud:** COST PRICE OF GOODS: EVIDENCE. On an issue as to whether 4 the seller of a stock of goods who was to receive compensation based on the cost price, had fraudulently raised the cost mark on the goods, it was proper to permit a witness of long experience in the mercantile business to state whether the marks on the goods were the original cost mark; and that the stock was old, it appearing that the marks on the goods were fresh.

**Same.** On an issue of fraud in the valuation of a stock of goods, a witness of experience who has familiarized himself with the stock is competent to estimate the difference between the actual wholesale cost of the entire stock as inventoried by him, and the inventory as furnished by the seller.

**Same.** The testimony of the seller of a stock of goods that he remarked the same upon an explanation of the original cost mark from his vendors, without giving the explanation, was subject to the objection that it was hearsay; and his belief that the goods as finally marked bore the wholesale price was also inadmissible.

**Replevin:** INSTRUCTIONS. In replevin of a stock of goods taken by a mortgagee in an attempt to foreclose a mortgage given for part of the purchase price, where the only issue submitted was failure of consideration, an inadvertent reference to a claimed fraud in invoicing the goods was without prejudice; and an instruction that if the seller or one in his employ changed the cost price of the goods so as to increase the mortgage debt the plaintiff could recover, was proper.

**Sales:** COST PRICE. Where a retail dealer sold his entire stock under a contract that the consideration should be based on the cost price, reference was had to the wholesale cost price without regard to the price marked on the goods.

*Appeal from Hardin District Court.*— HON. J. R. WHITAKER, Judge.

FRIDAY, DECEMBER 16, 1904.

ACTION in replevin. Judgment for plaintiff, and both parties appeal; that of defendants being perfected first. *Affirmed.*

*Albrook & Lundy* and *R. F. Graham,* for appellants.

*Huff & Huff* and *J. H. Scales,* for appellee.

LADD, J.— On the 24th day of February, 1902, D. W. Townsend, as agent of the plaintiff, entered into a contract by virtue of which he conveyed to the defendant, J. E. Ammons, a hotel property at Independence, Iowa, and some land in Missouri, estimated to be worth $7,700, in consideration of

which the latter delivered to said agent a certain stock of merchandise at Eldora, this State. Under the agreement the goods were to be inventoried " at cost price as shown upon the goods, except such goods as be damaged, and they to be taken at their actual worth." Ammons acted for himself in making the inventory, and Townsend was represented by one Smith, who had acted as Ammons' agent in effecting the deal. The invoice amounted to $11,075, and Townsend, acting for the plaintiff, executed a note to Ammons for the sum of $3,375, the difference between estimated values of the properties exchanged, and a chattel mortgage on the stock of goods to secure its payment. This occurred on the 26th day of February, and about the middle of March Ammons seized the entire stock under the mortgage, and proceeded to foreclose the same. In this action, begun March 20th, the goods were replevined, the plaintiff alleging (1) that the terms of the mortgage were not such as to authorize the mortgagee to take possession whenever he might choose, and, (2) by way of an amendment to the petition, that the mortgage was without consideration, for that the cost marks of the goods had been fraudulently raised by Ammons, and invoice " padded " by including goods not in the stock.

I. The plaintiff had paid the proceeds of sales in strict conformity with the terms of the note, and the only excuse urged for seizing the property is a condition of the mort-

1. CHATTEL MORTGAGES:) inconsistent provisions; right to foreclose.
gage authorizing the mortgagee so to do whenever he should choose. The court instructed the jury that the mortgagee had that right, and this view is challenged by plaintiff's appeal. An examination of all the instruments has convinced us that such was not the intention of the parties. The mortgage provides that " the right to move said goods to some other place in Iowa is reserved, subject to giving the mortgagee notice in writing of said place and time of removal; mortgagee also reserves the right to handle said goods in a regular legitimate mercantile way"; that the amount secured should be paid

" according to the terms of one promissory note "; and also
that, " in case of default made in the payment of the above-
mentioned promissory note, or in case of my attempting to
dispose of or remove said goods only as stipulated in note of
the aforesaid goods and chattels, or any part thereof, or
whenever the said mortgagee shall choose so to do, then and
in that case it shall be lawful for the said mortgagee or his
assigns by himself or agent to take immediate possession of
said goods." Other portions of the mortgage are similar to
those usually found in such instruments. The portion
quoted is in harmony with the language of the note in con-
nection with which and the contract the mortgage should be
construed:

For value received I promise to pay J. E. Ammons or
order thirty-three hundred and seventy-five dollars as soon
as the money can be obtained from the sale of a certain stock
of clothing for which this note is given as a part of the pur-
chase money. All money received is to be turned over as fast
as received less necessary and legitimate expenses, which are
not however to exceed the sum of one hundred dollars per
month. The right to remove these goods to some other place
in Iowa is reserved and also the right to handle these goods
in a regular mercantile way which is agreed to.

Thus the money to pay the note was to be obtained from
the sale of the goods, and to accomplish this the " right to
handle the goods in a regular mercantile way " was reserved
to the mortgagor both in the note and mortgage. That right
was not parted with. That was the right Townsend was
exercising when the defendant Ammons seized the stock. It
was essential, in order to enable him, as agent of the plain-
tiff, to reduce the goods to money out of which, by the terms
of both instruments, the indebtedness was to be paid. Only
by the continued possession of the property could sales " in
the regular mercantile way " be effected, and to guard against
any interferences therewith the reservation was incorporated
into the mortgage. That the seizure of the goods by Am-
mons was in derogation of this reserved right, in that it de-

prived the mortgagor of the opportunity "to handle said goods in regular legitimate mercantile way," seems too plain for argument. Certainly the plaintiff could not proceed with the sale of the stock as merchants usually do while Ammons was in possession and proceeding to foreclose. If so, the printed clause permitting the mortgagee to take possession whenever he might choose was inconsistent with the written reservation of the right to sell in the regular mercantile way; and the latter, for that it was in writing, must prevail. Section 4616, Code: *Robinson v. Gray*, 90. Iowa, 699, and like cases, are not in point.

II. An amendment to the petition was filed, alleging that the cost marks on the goods were fraudulently raised so as to increase the apparent cost from thirty to one hundred dred per cent., and the invoice padded by including goods not in the stock, and that the mortgage was without consideration for that the stock, if invoiced at cost price, did not exceed the estimated value of the property exchanged for it. The defendant moved to strike this amendment because an attempt to attach to an action in replevin an issue not triable therein. There was no error in overruling the motion. The issue in replevin is always which of the parties was entitled to possession at the commencement of the action. *Hilman v. Brigham*, 117 Iowa, 70. If there was entire want of consideration in the mortgage, the defendants had no right to enforce it, and the ground asserted was a proper one on which to base plaintiff's claim to possession.

2. REPLEVIN BY
MORTGAGOR:
pleadings.

III. The defendants then added a counterclaim to their answer, averring that Townsend had fraudulently misrepresented the value of the real estate exchanged for the stock of goods, and thereby induced Ammons to allow a price therefor exceeding its value more than the face of the note and mortgage. A demurrer to this was rightly sustained for the reason that the filing of a counterclaim in a replevin suit is prohibited by statute.

3. REPLEVIN:
counterclaim.

Thereupon the same matter was pleaded in an amendment by way of defense on the theory that, even though the allegation ·of the amendment to the petition were true, the amount was offset by the difference between the actual and represented values of the real estate.  A motion to strike this was sustained.  It will be recalled that the mortgage was executed to secure the excess of the invoice over and above the estimated value of the real estate.  The contention of plaintiff is that there was no such excess.  If so, then the mortgage was without consideration, regardless of whether the valuation of the real estate was procured by fraud.  Fixing that value was independent of the making of the invoice.  Any fraud therein might well be urged as a ground for avoiding the original contract of exchange,· but furnished no answer' to the charge that in executing that contract a mortgage was obtained without consideration, through deceit.  In other words, it is no answer to the charge of fraud in one transaction to allege that plaintiff had indulged in similar deceit in another.  See *Whitworth v. Thomas,* 83 Ala. 308 (3 South. Rep. 781, 3 Am. St. Rep. 725).  Irrespective of the name by which the amendment was disguised, it, in effect, pleaded a counterclaim, and the ruling of the court in striking it was correct.

IV.  The inventory was taken " at the cost price as shown upon the goods, except such goods as were damaged, and these to be taken at their actual worth."  The fraud charged was that Ammons " padded " the· invoice and raised the cost marks on the goods.

4. FRAUD: cost price of goods; evidence.

To establish this, it was shown that after the stock was replevined Townsend caused another invoice to be taken by C. E. Petty and L. G. Ward, from which it appeared from the highest marks on the goods that the stock amounted to $9,380.04.  Up to that time Townsend had received on sales $516.14 and Ammons $93.55.  Petty had enjoyed an experience of fifteen years in the mercantile business at Eldora, and was asked whether the mark on the goods

was the original cost mark. This was objected to on the ground that the witness had not shown himself competent. We think that his experience as a merchant and his examination of the tickets attached to the articles in the course of making the inventory qualified him to express an opinion as to the character of the marks on the several articles. Ordinarily, these are letters or hieroglyphics, which by the use of a key advise the merchant of the cost at wholesale without disclosing it to his patrons. Of course, Petty could not have known what the goods in fact cost, but his experience in handling similar goods enabled him to say with some degree of certainty whether the prices thereon so nearly approximated the usual wholesale or retail price as to indicate which was intended. This was illustrated by a subsequent answer that, " as a rule, the marks were what the goods usually retailed at."

Complaint is made of rulings by which this witness was allowed to state that the stock was old. This was admissible as a circumstance tending to show that the marks on the goods, which were shown to have been fresh, were not the original cost marks.

Both Petty and Ward were allowed to estimate the difference between the actual cost at wholesale of the entire stock as inventoried by them and the amount of their invoice. **5. SAME.** Appellants insist that neither of them was shown to have sufficient knowledge to enable him to answer. The record is such as to throw some doubt on the value of their opinions as expressed, but not such as to have required the court to reject them altogether. They were men of long experience in the business, and had thoroughly familiarized themselves with the stock by taking the invoice. In doing so they had observed the marks with a view of ascertaining their meaning. True, they had not estimated each article separately, nor was this essential in order to qualify them to form a judgment as to the entire stock. If, from the examination of the invoice in connection with

knowledge obtained by the inspection of the goods, they were able to form some opinion of the wholesale cost of the stock, it was sufficient. *Phelps v. Sampson,* 113 Iowa, 145. The rule that any one familiar with the values in question may testify is uniformly construed liberally. See Wigmore on Evidence, section 716. Petty at first said he could not make an estimate; that it would be a mere guess; but afterwards concluded that by examining the invoice he could form a judgment " in a way." All intended by this was that he could not be accurate in his judgment of what the cost of the goods at wholesale might have been. There is no standard of value at wholesale any more than at retail, and, of necessity, it is fixed in each case by a bargain between the seller and purchaser. So that any opinion of the cost could not be otherwise than uncertain. It was the best evidence available, however, and was competent for the purposes introduced. See *Graves v. Ins. Co.,* 82 Iowa, 637; *Enos v. Ins. Co.,* 4 S. D. 639 (57 N. W. 919, 46 Am. St. Rep. 796); *Smith v. Jensen,* 13 Colo. 213 (22 Pac. 434).

Ammons testified that the stock was originally bought by McCalmet, who transferred it to Allen & Pound, from whom he obtained it; that he put the tags on the goods from which the inventory was taken, and that the cost as indicated thereon was taken from the original stock ticket, which was removed because worn out; that the cost marks were explained to him by the parties from whom he purchased, and he was then asked for the explanation given. What was intended to be elicited was not disclosed, and, in the absence of anything indicating otherwise, the objection that the question called for hearsay evidence was well taken.

6. SAME.

The witness was then asked his belief as to whether the price he finally put on the new tickets which he attached to the goods would equal the wholesale price. Manifestly, this called for a comparison of values, rather than for the fact as to whether he had acted in the belief that the marks

bore the price at wholesale, and was not admissible as bearing on scienter.

V.   In the sixth paragraph of the charge the court inadvertently remarked that plaintiff claimed a farther credit on the note by reason of the fraud alleged, but in others 7. REPLEVIN: in-the issues were clearly stated, and the jury told structions. that the claim of plaintiff was that the mortgage was without consideration.   That issue only was submitted, and the jury could not have been misled by this lapse. Again, in the ninth paragraph the jury was told, if either Smith or Ammons changed the tags " so as to make the same show a greater price than the actual cost of the same," this, with other matters, might form the basis of a finding against defendants.   This was correct, for Smith, at the time of remarking the goods, was in the employ of Ammons, and assisting him therein; and the circumstances were such as to leave it open for the jury to say, notwithstanding their denial, that changes as alleged were effected.   The eleventh instruction is criticised for that, as is said, there was no evidence that the inventory was padded.   The invoice of Petty and Ward, in connection with the stipulation of the amount of sales, supplied such evidence.   Exceptions to other instructions given are equally void of merit.   Those refused, in so far as containing correct statements of law, were included in the ones given.

The third instruction refused purported to construe the meaning of the clause, " at the cost price as shown upon the goods," as meaning the price on the goods, regardless of 8. SALES: cost whether these represented the actual cost or price. not.   " Cost price " is a relative term, necessarily depending for its meaning on the situation of the parties and the circumstances under which used.   Thus the cost price to the importer is one thing, to the jobber another, to a retailer another, and to the purchaser from the retailer still another.   *Herst v. De Comeau*, 1 Sweeny (N. Y.) 590. It is said to be what is actually paid or promised to be paid

for an article.  *McCoy v. Hastings & Co.*, 92 Iowa, 585. As applied to a retail stock of goods, it usually has reference to the cost at wholesale, and that was the sense in which the term must have been employed in this contract.  If the marks on the goods gave the retail price, or had been so tampered with as not to indicate the cost at wholesale, then the cost price was not " shown on the goods."   For this reason the instruction was properly refused.   Other rulings of the court challenged by appellant do not require separate consideration.

The result of the reversal on plaintiff's appeal and an affirmance on defendant's appeal is that the judgment is *affirmed.*