BUFFALO CENTER LAND & INVESTMENT COMPANY, Appellant, v. JACOB SWIGART et al., Appellees.

**PLEADING:** Demurrer—Ruling—Adjudication. A ruling on a demurrer to a pleading, though not excepted to, is no adjudication of the law governing a subsequently filed substitute pleading.

**MORTGAGES:** Foreclosure—Waiver—Election of Remedies—Inconsistent Pleadings. A pleading asking a foreclosure of a mortgage, simply (a) for the interest due thereon, (b) for the amount of taxes paid, and (c) for abstract fee paid, filed after a former pleading asking a foreclosure for *principal,* interest and taxes had been held bad on demurrer, is not a waiver of the right to later plead that, under the terms of the mortgage governing defaults in payment of interest, taxes, etc., the entire principal had matured, and that the plaintiff was, therefore, entitled to a foreclosure for (a) *principal,* (b) interest, (c) taxes paid, and (d) abstract fees. paid.

PRINCIPLE APPLIED: A petition, manifestly defective in its allegations, was filed, praying the foreclosure of a mortgage (a) for *principal,* (b) for interest, and (c) for taxes paid. On demurrer, it was held bad. Plaintiff, without excepting to the ruling on demurrer, then filed his "first" amended and substituted petition, simply praying a foreclosure (a) for interest, (b) for taxes paid, and (c) for abstract fee paid. Later, plaintiff filed a "second" amended and substituted petition, praying a foreclosure (a) for *principal,* (b) for interest, (c) for taxes paid, and (d) for abstract fee paid. *Held,* the filing of the "first" amended and substituted petition was not a waiver of the right to file the

''second''—was not a waiver of the right to insist on the claim that, under the conditions of the mortgage, the entire principal was matured by defendant's failure to pay interest, taxes, etc.—was not an election to proceed solely for the unpaid *interest, taxes, abstract fee*, etc.

MORTGAGES: Foreclosure—Assignee of Note and Mortgage—Interest Installment—Ownership. Evidence reviewed, and held to show that plaintiff in foreclosure was the owner of an unpaid installment of interest in question as indorsee.

MORTGAGES: Foreclosure—Conditions—Demand and Notice—Validity. A condition in a mortgage that certain acts of omission or commission on the part of the mortgagor shall, at the *option* of the mortgagee, mature the entire indebtedness, and that an action to collect or foreclose may be brought *without first making demand for fulfillment of conditions or giving notice of election to treat the debt as matured*, is valid.

MORTGAGES: Foreclosure—Breach of Conditions—Evidence. Evidence reviewed, and held sufficient to show that a mortgagee had breached the conditions of the mortgage in the matter of paying taxes, interest, etc.

PAYMENT: Requisites and Sufficiency—Checks. A bank, at whose place of business a note is payable, may not accept as payment the check of the maker of the note upon another bank.

MORTGAGES: Foreclosure—Commencement of Action—Subsequent Defaults—Amendments. Breaches of the condition of a mortgage occurring subsequent to the commencement of the action to foreclose may very properly be set up by way of amendment.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

THURSDAY, MARCH 9, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

SUIT in equity to foreclose a mortgage. The trial court dismissed the petition, and plaintiff appeals.—*Reversed and Remanded.*

*Burt J. Thompson* and *Alan Loth,* for appellant.

*Wesley Martin* and *D. C. Chase,* for appellees.

Deemer, J.—I. The action is upon a promissory note for $4,000, made and executed by the defendant Swigart, March 1, 1913, to Klaus Smid, due by its terms, March 1, 1923. The note provided that, should interest not be paid when due, it should draw interest at the rate of 8 per cent. This note was endorsed in blank by the payee, and is now the property of the plaintiff. The mortgage which is sought to be foreclosed, was a second one, executed by the same parties to Smid, on April 10, 1913, and it contained the following, among other provisions:

"To be void upon conditions that said Jacob Swigart & Pearl Swigart pay said second party or assigns $4,000, on the first day of March, 1923, with interest thereon from Mch. 1, 1913, at the rate of 5 per cent per annum, payable annually on the first days of March and in each year, according to the tenor of one bond with interest coupons attached, of even date herewith, with interest thereon at the rate of 8 per cent per annum after maturity, payable annually at the office of Security Title & Loan Company at Webster City, Iowa.

"If said first party shall keep and perform all the agreements of this mortgage, then these presents to be void, otherwise in full force.

"Said first party hereby pledges all rents, issues, profits and income of the mortgaged premises to the payment of the debt secured hereby. Said first party shall pay all taxes and assessments upon said property to whomsoever laid or assessed, and including personal taxes and should any reduction be made in the assessment of taxes on said land by reason of this mortgage, and payment thereof required of the mortgagor or assigns, then said mortgagor shall pay the taxes on this mortgage and the debt hereby secured before delinquent; shall not suffer waste; keep all buildings thereon insured to the satisfaction of said second party in a sum not less than.............. dollars, delivering all policies and renewal receipts to said second party, and in case the taxes are not so paid, or the

insurance so kept in force by said first party, the second party shall have the right to pay the taxes and to keep the property insured and may recover the amounts so expended and this mortgage shall stand as security therefor, and said first party shall pay, in case of suit, a reasonable attorney's fee and expenses of continuation of abstract, and all expenses and attorney's fees incurred by said second party or assigns by reason of litigation with third parties to protect the lien of this mortgage.

"A failure to comply with any one of the agreements hereof (including warranty of title) causes the whole debt to at once become due and collectible, if said second party or assigns so elects, and no demand for fulfillment of broken conditions nor notice of election to consider the debt due, shall be necessary previous to commencement of suit to collect the debt hereby secured or any part thereof, or to foreclose this mortgage, and said second party or assigns may take possession of said land and account only for the net profits. Said taking possession shall in no way retard collection or foreclosure. A receiver of the mortgaged property shall be appointed on the application of the said second party, at any time after default of the first party as to any of the provisions thereof, either independently or in connection with foreclosure, and in connection with such foreclosure, may be appointed at the commencement of the suit or during its pendency, or after decree of sale, if the property does not sell for enough to satisfy the debt, interest and cost; and such receiver shall account only for the net profits derived from said property.

"All money paid by said second party or assigns for insurance, taxes, abstract, or to protect the lien of this mortgage, shall bear interest at the rate of 8 per cent per annum, payable annually, and be a lien on said land under this mortgage."

This mortgage was also assigned by Smid to the plaintiff, by written assignment, of date October 8, 1913. Plaintiff

commenced its action on the note and mortgage, April 29, 1914,
and simply alleged that, by its terms, the interest and the note
were due. In an amendment to the petition, filed in May of
the same year, it alleged that, since the execution of the
mortgage, and on the same day that it filed its amendment,
it paid the taxes on the property, amounting, with interest
and penalty, to the sum of $151.88, and for this amount, in
addition to the amount of the note, asked judgment and a
decree of foreclosure.

Defendants Swigarts appeared and filed a demurrer to this
petition, and the demurrer was sustained, and no exception
was taken to the ruling. Thereafter, and on October 19, 1914,
plaintiff filed a substituted petition, in which
it alleged the making of the note and mort-
gage, the transfer of the same to plaintiff,
failure of defendants to pay interest maturing on the note
March 1, 1914, and the further fact that plaintiff paid taxes
on the mortgaged property on the 7th of May, and asked
judgment and foreclosure, not for the amount of the note,
but for the amount of the unpaid interest, taxes paid; abstract
fees, etc. Not content with this, on February 10, 1915, it
filed what it called a second amended and substituted peti-
tion, in which it recited the making of the note and mort-
gage, the transfer thereof to plaintiff, and further stated
that defendants failed and neglected to pay the interest
when due, failed to pay taxes when they matured, and failed
to keep the mortgaged premises insured, and to deliver the
policies to the plaintiff. It also alleged that plaintiff had paid
the taxes on the property after they had become delinquent;
and for the amount so paid, with an abstract fee, plaintiff
asked judgment, in addition to the amount of the note, with
interest. It further averred that defendants' failure to pay
interest and taxes when due, and to keep the property insured,
matured both note and mortgage, and it asked foreclosure
thereof. Defendants moved to strike this second substituted

1. PLEADING: de-
   murrer: ruling:
   adjudication.

petition, and filed a demurrer thereto, and both pleadings were overruled, and thereafter, plaintiff filed a supplemental petition, averring that defendants failed to pay the interest maturing March 1, 1915, thus maturing the entire indebtedness, and that, for that reason, plaintiff again elected to declare the note due, and it also asked judgment for the additional installment of interest. The defendants Swigarts then answered, admitting the execution of the note and mortgage. They pleaded an adjudication against plaintiff, growing out of the rulings on the first demurrer, to which no exception was taken. They also averred that, by direction of the original payee, Smid, prior to his transfer of the note, they deposited the amount of the interest maturing March 1, 1914, with a bank at Blairsburg, Iowa; that they did not know of the transfer of the note until after that date, and were not aware that Smid had not received this interest, until long after the commencement of this action. It should be noted, in this connection, that the assignment of the mortgage to plaintiff was not placed of record until October 13, 1914. Defendants also pleaded that they deposited the interest maturing March 1, 1915, or offered to deposit the same, with the Hamilton County State Bank, at Webster City, the place where the note was payable, and that they have since been ready, able and willing to pay the same. They further averred that they procured an insurance policy on the premises, adequate in amount; but that, as there was a first mortgage on the premises, they delivered the policy to the holder of that mortgage. They also pleaded that plaintiff had elected, by the pleadings filed herein, to waive default in the payment of interest for the year 1914, and the taxes, and thus waived its right to insist upon payment of the principal sum. Plaintiff demurred to this answer, and to each and every division thereof. This demurrer was sustained, and defendants thereupon amended their answer, stating that no demand was ever made upon them for the interest when due; that plaintiff had

notice of the deposit of the March, 1914, interest payment in the bank for the original payee, when it (plaintiff) acquired the note and mortgage, and that, by filing the first amended and substituted petition, plaintiff elected to waive the right to declare the entire sum due. Plaintiff then replied, denying all the allegations of the answer, as amended, and further averred that defendants had notice of all defaults made by them, long prior to the bringing of the suit, and had full opportunity to pay defaulted interest, before the suit was begun. This statement of the pleadings seems to be necessary, in view of the claims made by the respective parties thereon.

II. It is manifest that, until final judgment and decree, there was no adjudication in the case. The ruling on the demurrer settled nothing, except the law upon the facts recited in the pleading attacked, and this was subject to change, at any time, down to final decree and judgment. The original pleading was defective in many particulars not necessary to be pointed out, and this original petition was withdrawn by the substitutes filed in lieu thereof, and the case never went to judgment on that pleading. But, even if there had been no change in the allegations of the original petition, the court had the right, at any time before formal judgment, to change its mind on the law of the case. Again, plaintiff made no election of remedies which would bind him, and waived nothing by filing his substituted petitions. *Smith v. Bricker*, 86 Iowa 285. There was but one ultimate claim

2. MORTGAGES: foreclosure: waiver: election of remedies: inconsistent pleadings.

in the case, and but one judgment, and plaintiff's position has been persistent, if not consistent, and there was no election or waiver on its part, of whatever remedies it may be entitled to, under the final pleadings, and the testimony adduced in support thereof. *Easton v. Somerville*, 111 Iowa 164; *Wells v. Western Union Telegraph Co.*, 144 Iowa 605; *Fisk v. City of Keokuk*, 144 Iowa 187.

III. The case must be determined upon the final plead-

ings and the testimony adduced. The issues are not many, notwithstanding the voluminous pleadings; and we shall first determine the facts. On October 8, 1913, plaintiff entered into a written contract, with Smid, for the transfer of a tract of land to Smid, in exchange for the note and mortgage in suit, a stallion, and a certain lot ,in the town of Blairsburg, plaintiff being denominated party of the first part, and Smid, party of the second part. This contract contained the following, among other provisions:

3. MORTGAGES: foreclosure: assignee of note and mortgage: interest installment: ownership.

"Party of the first part is to pay second party $500 on March 1, 1914, at which time deed is to be given to second party, subject to the $5,000 mortgage. Second party to assign mortgage of $4,000, give deed to said lot and turn over. stallion, immediately on acceptance of them by first party. First party to pay second party the rent from building and the interest on $4,000 mortgage from date they are turned over to first party to March 1, 1914. This contract is made subject to the approval of said $4,000 mortgage, said building and lot, and said stallion, by the Buffalo Center Land & Investment Company. Said Klaus Smid is to retain possession of the above described Percheron stallion and in lieu of same, the said second party agrees to accept $300 cash payment by the said first party March 1, 1914, instead of the $500 referred to in the above agreement."

It will be noticed, from this, that plaintiff was to refund to Smid, the rent collected for the use of the Blairsburg lot, and the interest on the note in suit to March 1, 1914, and the oral testimony shows that it was agreed that Smid should try to collect the interest maturing March 1, 1914, from the Swigarts, and, if he failed, plaintiff would pay the amount thereof to him. Sometime before March 1, 1914, Smid told the Swigarts that he had sold the mortgage to plaintiff, but that the interest belonged to him, and that he would come over to Blairsburg and get the money, and that he would go to the bank for it. On the 2d day of March, 1914 (the 1st being

on Sunday), Smid went to the bank, and was informed that there was no money there for him. As he failed to get this interest from Swigart, he immediately reported the matter to plaintiff, and, within a few weeks thereafter, plaintiff paid Smid the interest, in accord with the terms of their contract. One of the defendants said that he left a check for the amount of this interest in the bank at Blairsburg on Saturday, the last day of February, according to his recollection, and that he did not know it had not been paid, until six months thereafter, when the check was returned to him by the bank, uncanceled, with other checks. A check payable to Smid, dated March 1, 1914, and signed by Swigart, was introduced in evidence, but there is no testimony that Smid ever saw it, or that it was canceled or placed to the credit of anyone; and there is no controversy that Smid was informed by a bank official, on Monday, March 2, 1914, that there was no money there for him. Plaintiff had no knowledge of the arrangement between Smid and Swigart, with reference to this interest; but, as Smid was to collect the same for plaintiff, it was bound by whatever arrangements Smid made in the premises. As neither plaintiff nor Smid received the interest maturing March 1, 1914, plaintiff, sometime during that month, sent Swigart a notice that the interest was due and unpaid, to which Swigart, on April 13th, responded as follows:

"Blairsburg, ...................

"Yours in regarst to the $200 intrest on the Clas Smid mortgage. I did not now it was do to you and so you can hardley blame me now I have the money about March first but I am a little short at present Now if you will wate 30 or 60 days I will pay you 8 per cent on it.

Yours        Jacob Swigart

"I have Not bin notefide until I got your letter."

Doubt naturally arises at this point, regarding the claimed arrangement between Smid and Swigart, to the effect that Swigart did deposit the check, at the time that he claims to

have done so. None of the bank officers were called to testify as to the deposit of the check, or to deny the testimony of Smid, to the effect that, when he called at the bank, on March 2d (Monday), he was informed that there was nothing there for him. The taxes on the land covered by the mortgage for the year 1913, were not paid on May 5, 1914, and, at that time, plaintiff paid both installments, with interest on the first, from the time that it became delinquent, amounting in all to $151.88. With reference to this, Swigart said that he let the taxes go by until September, and that, when he went to pay them in that month, he found, or afterwards discovered, that they had all been paid by someone, and that he then paid all the taxes which had been assessed against his property, and were then due and unpaid. This suit was originally commenced April 29, 1914, shortly after Swigart wrote his letter about paying interest, and, when plaintiff paid the taxes, in May of the same year, it amended its petition, reciting that fact, and asking to recover the same, against the defendant, in addition to the amount due on the note, and a foreclosure of the mortgage.

The land covered by the mortgage in suit, consisting of 120 acres, was covered by a prior mortgage of $7,000, and a policy of insurance upon the improvements on the land, in the sum of $1,500, had already been taken out, and delivered to the first mortgagee, or its agent. The improvements upon the property were not worth to exceed $2,000. Swigart did not take out any other policy, and none was ever delivered to Smid or the plaintiff. The note in suit was made payable at the Hamilton County State Bank, at Webster City, and the mortgage provided for payment at the office of the Security Title & Loan Co., at Webster City. Although Swigart had full knowledge of the ownership of the note and mortgage, the matter then being in litigation, and plaintiff was undoubtedly the owner of the instruments, Swigart, on February 27, 1915, made a check on the State Bank of Blairsburg, for the sum of $200, payable to the Hamilton County State Bank,

reciting that it was for interest on the mortgage in suit, and had the same sent to the Hamilton County State Bank, with the following letter:

"Feb. 27, 1915.

"Hamilton County State Bank,

"Webster City, Iowa.

"Dear Sirs:

"At the request of Mr. Jacob Swigart we are enclosing his check for $200 same is to pay the interest on a $4,000 mortgage that is payable at your bank. Mortgage is against 120 acres of land in 21 Township 88 Range 24, and was given to Klaus Smid. Mr. Swigart is not certain who is the present owner, but thinks it is the Buffalo Center Land & Loan Co.

"Yours truly,

"Jas. W. McNee, Cash."

The Hamilton County State Bank received the letter; but, being unable to locate the holder of the note, it, within a few days, returned the check, with the following endorsement upon the letter which accompanied the check:

"As we are unable to locate this matter, we return you herein the check as stated above."

Plaintiff had no knowledge of this transaction, but one of its officers gave the following testimony with reference thereto.

"Q. Suppose this $200 due March 1, 1915, had been offered to you, would you have taken it? A. I think I would have consulted with the attorney before I would have done anything at that time. I did not hear of this deposit at the Hamilton County State Bank for some little time afterwards. I probably would not have taken the interest without consulting with and taking the advice of our attorney. As the matter was in court, that is probably what I would have done."

Upon this state of facts, the trial court denied the prayer of the petition, but also provided in the decree that:

"The plaintiff, however, is permitted to commence another

action in foreclosure at the expiration of 30 days from this date unless within that time the defendant shall pay into the hands of the Hamilton County State Bank at Webster City, Iowa, for the use of the plaintiff, the interest that was due March 1, 1914, to wit: $200, with interest thereon at the rate of 8 per cent. from March 1, 1914, up to the time the defendant shall pay the same into said bank, also the interest due March 1, 1915, to wit: $200, together with interest at the rate of 8 per cent from March 1, 1915, to the time the same shall be paid into the said bank for the use of the plaintiff; also the amount paid by plaintiff for taxes, with interest thereon at the rate of 6 per cent. from the time said taxes were paid by the plaintiff till the amount thereof, together with the said interest thereon, shall be paid into the said bank for the use of the plaintiff.''

We are not advised as to what was subsequently done with the case, but apprehend that plaintiff did not commence another action.

IV. We have for decision the question as to whether, notwithstanding the fact that the note on its face is not due, plaintiff, under the facts disclosed, was entitled to bring or maintain its action to foreclose the mortgage for the full amount of the note, with interest, taxes, etc., because of defendants' failure to comply with the terms of their agreement. We may, in this connection, eliminate the provision as to insurance upon the property, for the reason that plaintiff itself, through its authorized agent, did that for us, while on the witness stand, evidently upon the theory that, as the property was fully insured for the benefit of a prior mortgagee, it had all the benefit it could derive from another policy, even if the property could have been insured for an additional amount. We also eliminate the claim that the mortgage does not sufficiently identify the debt secured, and, for that reason, its provisions must be looked at, in determining whether the note has been matured, by reason of defendants' failure to

comply with the conditions of the mortgage. The answer admitted the making of the note and mortgage, and tenders no issue regarding the connection between the two.

The broad question as to the proper construction of the note and mortgage, with reference to the result of defendants' failure to pay installments of interest as they matured, and taxes before they became delinquent, lies at the threshold of this discussion. The note itself makes no reference to the results of failure to pay taxes, but does provide that unpaid interest installments shall draw interest at the rate of 8 per cent. per annum. The mortgage, however, provides for the payment of interest annually, on the first day of March in each year, and then provides that, if the mortgagor shall keep and perform all the agreements of the mortgage, then the mortgage shall be void. It also provided that the mortgagor should pay "all taxes and assessments upon the property, . . . and in case the taxes are not paid, the mortgagee shall [should] have the right to pay the taxes and recover the amounts expended, and the mortgage shall stand as security therefor." This is followed by a stipulation, to the effect that a. failure to comply with any of the agreements of the mortgage, causes the whole debt to become due and collectible, if the mortgagee or his assigns so elect, and that no demand for fulfillment of conditions, or notice of election to consider the debt due, should be necessary, previous to the commencement of a suit to collect the debt, or any part thereof, or to foreclose the mortgage. These conditions are clear and unambiguous, and the parties had the right to make them, there being nothing therein contrary to law or to public policy. Even though they give the holder of the note and mortgage an election or an option to declare the entire indebtedness due, for failure to perform, no demand or notice of election was required before bringing suit to foreclose. The contract expressly so provides, and, in this respect, the case differs from *Johnson v. Northern Minnesota Land & Investment Co.,* 168

*Marginal note:* 4. MORTGAGES: foreclosure: conditions: demand and notice: validity.

Iowa 340. It is more like the contracts involved in *Moore v. Crandall*, 146 Iowa 25; *Johns v. Rice*, 165 Iowa 233; *Fox v. Gray*, 105 Iowa 433; *Swearingen v. Lahner*, 93 Iowa 147; and other like cases, including, from other states, *Hall v. Jameson* (Cal.), 12 L. R. A. (N. S.) 1190; *Hodgdon v. Davis* (Dak.), 50 N. W. 478. See, also, 2 Jones on Mortgages (6th Ed.), chapter 25, and cases cited.

We are constrained to hold the conditions valid, and our next inquiry is: Did the mortgagor fail or neglect to perform them? He did nothing toward paying the taxes, until September of the year 1914, after this action was commenced, and then found that the entire tax for the year 1913 had been paid. Under our statute, taxes become due the first Monday in January succeeding the year of levy, and delinquent, from and after March 1st; but, if one pays half of his taxes before the 1st day of March, he has until the 1st of September to pay the other half. If he does not pay the first half by April 1st, the entire tax for the year becomes delinquent from and after March 1st. The taxes here involved were not paid by anyone until May 5, 1914, and they had, therefore, been delinquent since March 1, 1914. Defendant offered no excuse for this, except to say that he usually paid in September. As to the interest's maturing March 1, 1914, payment is claimed to have been made by a check deposited by Swigart in the Blairsburg bank. We are in doubt about this check's ever having been deposited there, either for plaintiff or Smid. If it was, it was not available to either, for the bank never so treated it, and, when Smid inquired for it, he was informed that no check was there. If it ever was there, it seems strange that, when Swigart was afterwards called upon to pay the interest, he did not disclose the fact that the matter had already been taken care of by check, instead of asking for more time in which to pay. After getting this notice to pay the interest, which he must have received April 4, 1914, he did nothing but ask for time, and plaintiff waited until April

*Margin note:* 5. MORTGAGES: foreclosure: breach of conditions: evidence.

29th, before beginning suit. Even then, it had not discovered the nonpayment of taxes. The matter then ran along until the next installment of interest was due; and then, although defendant Swigart knew who owned the note, and the residence of such owner, he did not send the money to plaintiff, but made a check payable to the Hamilton County State Bank, for the amount of the interest. This bank, not knowing the owner, returned the same, and defendant received back the check, and still has it. The bank did not use it, or give anyone credit for the amount thereof, and it never went through the clearing house. It is true that the note was made payable at the Hamilton County State Bank, but this did not authorize payment of either principal or interest at that bank unless the note was there; and, in any event, the bank could not accept the check of the maker upon another bank as payment. *Bank of Montreal v. Ingerson*, 105 Iowa 349; *Graydon v. Patterson*, 13 Iowa 256; *Drain v. Doggett*, 41 Iowa 682. It should be stated, in this connection, that defendant defaulted in his interest on the first mortgage, which was payable March 10, or May 1, 1914, and it also appears that a judgment was rendered against him, in December of the year 1913, in the sum of $730, which was unsatisfied at the time that this trial was had. These matters have some bearing upon his ability to pay, and upon the value of the checks, if any, deposited by him.

6. PAYMENT: requisites and sufficiency: checks.

Appellee contends, however, that appellant waived the default in paying the interest in March, 1915, by reason of the testimony that we have quoted, as to what its principal officer said that he might or might not have done, had he known of this deposit of the check with the Hamilton County State Bank. We do not so construe his testimony. There was no waiver, in any event. Again, it is insisted that, as plaintiff commenced its suit originally to recover the interest installment due March 1, 1914, and afterwards amended, so as to add taxes subsequently paid, it elected to rely upon a money judgment, and waived foreclosure. The difficulty with

this position is that, at all times, plaintiff was asking the fore-closure of the mortgage for the full amount of the note, with interest, or with interest and taxes paid.   From this original prayer, it never receded, and there was, mani-festly, no election under the terms of the mortgage.   Again, it is said that it was not permissible for plaintiff to file an amended and supplemental petition, covering breaches of condition which occurred after suit was brought.   We do not think this proposition good.   It involves the conclusion that, although such default occurred as would justify the relief prayed, yet, as it occurred after suit was brought, plain-tiff cannot introduce it into its original action, but must dis-miss that, and commence a new and entirely independent pro-ceeding, in order to be awarded its rights.   We have not adopted this rule.   On the contrary, we have held, in cases where a demand or notice is required before bringing suit, and action is brought without such notice or demand, that demand or notice may be given after action is commenced, and brought into the case by an amendment.   The dismissal of the one suit and the bringing of another, has been held to be an idle and useless ceremony.   We shall not cite the cases so holding, as they are familiar.

7. MORTGAGES: foreclosure: commencement of action: sub-sequent de-faults: amend-ments.

The decree cannot be approved, and it must be reversed, and the cause remanded for one in harmony with this opinion. —*Reversed* and *Remanded*.

EVANS, C. J., WEAVER and PRESTON, JJ., concur.