R. J. Swanson, referee in partition, appellee, v. Milton V. Baldwin, appellant.

No. 49261.

(Reported in 85 N.W.2d 576)

October 15, 1957.

Stipe, Davidson & Hemphill, of Clarinda, for appellant.

Chas. A. Reese and Richards & Richards, all of Red Oak, for appellee.

THOMPSON, J.—The plaintiff, as referee in partition, brought his action for specific performance to compel the defendant to pay the balance of the agreed purchase price for a tract of land in Montgomery County. The defendant answered, admitting the sale, the amount paid down, $550, and the remainder due in the sum of $4950 as alleged, and tendering this amount into court "to be held until the disposition of this suit * * * and asks the court to release said tender as it sees fit, subject to any setoff allowed in the accompanying counterclaim." The defendant then pleaded a counterclaim, alleging the sale, giving the same description of the tract purchased as does the plaintiff, and claiming damages in the sum of $1195. These are said to arise because of the following pleaded facts: At the referee's sale the referee warranted that the entire tract being sold by him (the defendant's purchase was of only a comparatively small part of the entire farm being partitioned) was surveyed into separate parcels, and that stakes had been set at the corners of the tracts to locate the boundaries; that the survey stakes were in existence prior to the sale and the defendant knew of the location of the stakes and of the varying fertility of the soils, and relied on the referee's statements and warranties in making the purchase; that a later survey made after the sale shows the first one to have been in error, and the true lines of the tract sold to the defendant place the west boundary line 135.3 feet east of the position shown by the first stakes, and the east boundary line 87.4 feet east of the location first shown. It therefore appears, from the counterclaim, that the defendant will get 47.9 feet less in width, of undetermined length, than he thought he was purchasing. We were told in oral argument that the length is one-

half mile and the shortage translated into acres is about six and one-half. The plaintiff, likewise in oral argument, thought there would be about three and one-half acres less than the original and apparently erroneous survey showed.

The counterclaim does not itemize the damages, although in argument it is contended that the lost land on the west was much superior to that gained on the east. Upon a hearing to determine law points under R. C. P. 105, the trial court ruled that the counterclaim failed to state a cause of action and dismissed it. We granted the defendant an appeal as from an order before final judgment.

I. The able trial court in its order states: "In this case we are not faced with defective title or decrease in amount of the land but a claim that there is a diminution in value because of different land of less value having been indicated by the referee than the land covered by the legal description." If this were the true picture, we would have little difficulty in agreeing with the trial court. But the counterclaim does unmistakably assert a diminution in amount of land because of the misplaced stakes. No one contends that there was any intentional misrepresentation by the referee; on the other hand, taking the well pleaded allegations of the counterclaim as true, as both the trial court and this one must do under the application to determine law points, there is a shortage of 47.9 feet in width running the length of the tract. The defendant will get that much less than all parties thought he was getting when he made his contract.

II. The question before us then is whether a referee in partition is liable for unintentional misrepresentation as to the amount of the tract being sold; and, if he is responsible at all, to what extent. Probably the most helpful Iowa case on this point is Stonerook v. Wisner, 171 Iowa 109, 110, 153 N.W. 351, L. R. A. 1915E 834, Ann. Cas. 1917E 252. This involved a guardian's sale of a town lot belonging to his ward. The lot was thought by both seller and purchaser to be 132 feet in length; but after the sale it was discovered that the rear 12 feet had been appropriated by the public as an alley. The purchaser brought his action for abatement of the price agreed to be paid, alleging the lot was worth $1200 less than it would have been

with the full 132 feet, that there was still $400 of the purchase price unpaid, and asking the court to decree an abatement of the price *"proportionate to the loss in area of said lot."* (Italics supplied.) The lower court having sustained a demurrer to the petition, this court reversed.

■ The case contains an interesting and informative discussion of the extent to which the rule of caveat emptor applies to judicial sales generally. Caveat emptor is defined in Black's Law Dictionary, Third Edition, as meaning that "the purchaser of an article must examine, judge, and test it for himself, being bound to discover any obvious defects." It has been strictly applied to sales under execution, and to executors' and administrators' sales. See Rosenberger v. Hawker, 127 Iowa 521, 103 N.W. 781; Hale v. Marquette, 69 Iowa 376, 28 N.W. 647; Holtzinger v. Edwards, 51 Iowa 383, 1 N.W. 600. But we said in Stonerook v. Wisner, supra, page 113 of 171 Iowa, page 352 of 153 N.W.:

"It seems that the doctrine is not extended to mistakes in the quantity of land where sold by the acre, even though strictly applied to defects in title. * * * There is a decided tendency in the decisions to avoid conclusions in the hard application of the doctrine in the early cases, and to apply, where possible, the more just principles which obtain in sales under decrees in equity."

The opinion then proceeds to point out that the reasons for applying the doctrine of caveat emptor do not obtain in sales by guardians and in sales under partition proceedings. We said:

"A sale under partition proceedings is but a mode by which the parties themselves, through a statutory method, proceed to dispose of property * * * and for this reason, if the purchaser discovers the defect in time to save himself, he is not without remedy."

The conclusion in the Stonerook case was that because of the mistaken belief of both parties that the lot was longer than it actually proved to be, the purchaser was entitled to an abatement of the agreed price proportionate to the loss in area. It is true we said in the earlier case of Perrin v. Chidester, 159 Iowa 31, 37, 38, 139 N.W. 930, 933, that "A partition sale is a judicial

sale, and the rule of caveat emptor applies at least to a limited extent." The "limits" of the extent of application are not made clear. We shall endeavor to define them later in this opinion.

■ The rule is laid down in 68 C. J. S., Partition, section 205, page 340, that where a purchaser has been misled by a material misrepresentation relied on by him, even though such misrepresentation was innocently made, he is entitled either to a pro tanto abatement of the purchase price or to a rescission of the contract, as he may elect. A leading case on the question of a good faith mistake resulting in a sale of more than the referee in partition actually had power to sell is Peake v. Renwick, 86 S. C. 226, 68 S.E. 531, 33 L. R. A., N. S., 409, referred to in Stonerook v. Wisner, supra. See also Smith v. Britton, 38 N. C. 347, 42 Am. Dec. 175; McMichael v. McMichael, 51 S. C. 555, 29 S.E. 403 (cited and quoted from with approval in Stonerook v. Wisner, supra); Castleman's Admr. v. Castleman, 67 W. Va. 407, 68 S.E. 34, 28 L. R. A., N. S., 393; Elliott v. Jerman, Ohio Com. Pl., 116 N.E.2d 50, 52, 53; 40 Am. Jur., Partition, section 89, page 79; note to Peake v. Renwick, supra, pages 409 to 413 inclusive, 33 L. R. A., N. S.

III. The reason for holding to a different rule in the application of the doctrine of caveat emptor to sales under execution and by administrators and executors, on the one hand, and sales by guardians and referees in partition, on the other, is discussed in Stonerook v. Wisner, supra. This case clearly holds that it does not apply to its fullest extent to guardian's and partition sales. We have already referred to the statement in Perrin v. Chidester, supra, that it applies to a limited extent to such sales. While the statement was dictum under the facts of that case, we accept it and proceed to define the limits referred to.

■ The relief asked and granted in the Stonerook case was that the purchase price be abated proportionately to the loss in area of the lot. The authorities cited above generally hold that the purchaser who finds the amount of land he bought is substantially less than the amount as represented by the referee in partition may have his remedy either by a rescission of the entire transaction or an abatement pro tanto of the purchase

price, such abatement to be proportionate to the deficiency in area. We have found no case in which general damages, such as for the difference in value of the tract purchased as it would have been if it had been as represented, and its value as it actually was; or for a difference in value because of difference in soil, as here, have been allowed. If such damages were permitted they might conceivably exceed the amount of the sale price and the referee be held liable upon his bond. The referee is an officer of the court and entitled to protection against such a liability. The remedies of rescission or proportionate abatement are sufficient to protect the purchaser against innocent misrepresentation by the referee. It may perhaps be different in the case of actual, intentional fraud, but no claim is made here that the placing of the survey stakes was more than a mistake of the surveyor; a mistake of which both he and the referee were unaware until another survey was made after the sale.

IV. Since the defendant's counterclaim must be construed as a request for general damages rather than being limited to abatement in proportion to the acreage deficiency, we think the trial court was correct in holding that a cause of action was not stated. But we also hold that the defendant should have the right to amend to ask such abatement, or for a total rescission. He will then be entitled to show the number of acres of shortage between the tract enclosed in the original stakes and that covered by the correct description; and if he shows a substantial deficiency, to have the purchase price abated in proportion. There is still an adequate part of the purchase price unpaid and undistributed. He also has his remedy, if the deficiency is substantial, to rescind the entire contract and recover his initial payment. We are speaking here of the pleadings; we have no knowledge of what the evidence may show.

V. The plaintiff suggests that the defendant has elected his remedy and cannot now change his position. It is well settled that one who seeks to assert a remedy to which he is not entitled is not thereby precluded from pursuing another remedy which may be available to him. Lackender v. Morrison, 231 Iowa 899, 903, 2 N.W.2d 286, 288, and Missildine v. Miller, 231 Iowa 371, 376, 377, 378, 1 N.W.2d 110, and cases cited in each; 18 Am. Jur., Election of Remedies, section 24, pages 146, 147; 28 C. J. S.,

Election of Remedies, section 12, page 1080. Since we have held that in asking general damages in his counterclaim the defendant was pursuing a remedy which was not a remedy, he may still attempt recourse by other means available to him. Rescission and abatement pro tanto to the extent of the deficiency in area proportionate to the total price, would be inconsistent remedies; but to date he has pursued neither.

The ruling of the district court dismissing defendant's counterclaim is affirmed, with the modification that the defendant may have fifteen days from the time the decision in this court becomes final to plead by further asking for relief by rescission or proportionate abatement as above indicated. Costs taxed one half to each party. Modified, affirmed and remanded.

HAYS, C. J., and LARSON, OLIVER, PETERSON, SMITH, and WENNERSTRUM, JJ., concur.