UNITED STATES of America, Plaintiff,

v.

C. William ANTHONY, Elsie C. Anthony, Boss Hotel Company, Centerville Hotel Company, Continental Hotel Company, Defendants.

Civ. No. 6–1515–C.

United States District Court
S. D. Iowa,
Central Division.
July 10, 1964.

Donald A. Wine, U. S. Atty., Des Moines, Iowa, for plaintiff.

Robert E. Drey, Des Moines, Iowa, for defendants.

HANSON, District Judge.

This is an action brought by the Small Business Administration, hereinafter referred to as S.B.A., against C. William Anthony and Elsie C. Anthony, debtors, and Boss Hotel Company, a competing creditor of C. William and Elsie C. Anthony. The court overruled motions for summary judgment and the case is now being tried on a stipulation of facts entered into by S.B.A. and Boss Hotel Company. The Anthonys have been discharged in bankruptcy and have no interest in this case. Also the parties have agreed that as between S.B.A. and Boss Hotel Company the one whose lien is held prior shall receive all the security for the reason that a sale of the security would not result in an overplus available to the other party. The facts will be further developed as necessary in this opinion.

 S.B.A. claims that Boss Hotel Company is now estopped to assert its lien at least as a conditional sales agreement.

As of December 31, 1954, the security instrument had been executed by the lessees, the Anthonys, and this had been assigned to Boss Hotel Company. Both the security instrument and the assignment were recorded July 31, 1954.

On or about June 4, 1958, the Anthonys executed a chattel mortgage running to the Centerville National Bank on the same property as was given to the Boss Hotel Company as security. This mortgage was to secure a note dated June

4, 1958, in the principal amount of $14,223.00.

On or about July 9, 1958, the Centerville National Bank requested information as to the balance due Boss Hotel Company from the Anthonys.

On June 11, 1958, S.B.A. and the Centerville National Bank entered into a participation agreement with respect to the note for $14,223.00 received from the Anthonys. (That agreement was clearly contrary to law because at that time this note was clearly not secured and there was constructive notice of this by recordation in the Appanoose County Recorder's Office.)

A letter was then received from Boss Hotel Company dated July 11, 1958 stating that the balance was at that time $8,600.00. On or about July 22, 1958, a demand certificate of deposit in the Centerville National Bank in the amount of $8,600.00 was sent to Boss Hotel Company along with a request that the Boss Hotel Company release the Anthonys from the security instrument which the Anthonys had given to Boss Hotel Company and its assignor.

The Boss Hotel Company responded acknowledging receipt of the $8,600.00 but refused to give the requested release stating:

"However, lest there be any misunderstanding, we should note that purchasers have a continuing obligation under said agreement in respect of the payment of monthly rentals and taxes and in the performance of all of the other obligations of the lessee under the lease therein referred to and heretofore assigned to purchasers. In view of this and of the further circumstance that Boss Hotels Company and Centerville Hotel Company remain liable to the original lessor of said lease under its terms and the terms of its assignment, we cannot effectuate a release, en toto, of the obligations of purchasers under said agreement."

There was another letter allegedly sent by Boss Hotel Company to the Centerville National Bank on or about June 17, 1958, which stated:

"Mr. H. H. Drey has handed to me your letter to him of June 13th, with triplicate forms of Landlord's Waiver enclosed.

"As you know, Boss Hotels Company is a guarantor on the lease and if the waivers were to be executed by it it would be my understanding that the lease would be subordinated to the conditional sale contract trust receipt, bailment lease, chattel mortgage or other security in favor of the Centerville National Bank.

"Further, it would be my thinking that in the eventuality the guarantor had to make good and take over on the lease the security which it now has by way of the personal property on the premises could not then be resorted to by it without first paying off the new lienor.

"I would appreciate it if you would write me and give me the benefit of your thinking on the matter as to the foregoing and also pointing out to me wherein Boss Hotels Company will be benefited (other than receiving payment of the balance due on the purchase.)

"I would think it would also be desirable that we know the amount of the money loan and exactly how the funds are to be applied.

"I am wondering tentatively whether the situation might not be cleared by the procurement from the lessor of a release of the guaranty and what might be your thinking as to whether this is a possibility."

The S.B.A. attorney stated in answer to the request for admissions that he could neither admit nor deny the existence of this letter. It is not included in the stipulation and the court is not relying on it.

It appears to the court that the Centerville National Bank and S.B.A. had gotten themselves into trouble with a note which they knew was not validly secured and were somewhat desperate

in the attempt to get a release from Boss Hotel Company of the security. They were unsuccessful in their attempt.

S.B.A. states· in its brief that Boss Hotel Company accepted the $8,600.00 without objecting that the Anthonys had no right to mortgage the property. That is incorrect. Boss Hotel Company at the time of accepting the $8,600.00 expressly refused to release the security from the remaining obligations. S.B.A. says that Boss Hotel Company refused to subordinate its lien but made no mention of ownership of the chattels. The answer to that is that the security instrument was recorded and this was sufficient notice to them of the retention of title.

S.B.A. cites Bates v. First Savings Bank of Richland, 219 Iowa 1358, 261 N.W. 797, for the proposition that Boss Hotel Company is estopped by reason of having accepted the benefits of a transaction and cannot later take an inconsistent position. The court discussed this type of estoppel in United States v. Merchants Mutual Bonding Company, D. C., 220 F.S. 163, 179. In the present case, there is no agreement or contract which Boss Hotel Company made with S.B.A. or the Centerville National Bank and, therefore, they are taking no position inconsistent with any prior agreement. Boss Hotel Company is not taking a position inconsistent with any prior transaction. The position Boss Hotel Company is taking is exactly the same position they have always taken. That is they are asserting and not waiving or releasing their security.

There are other reasons why there is no estoppel. Boss Hotel Company did nothing to mislead S.B.A. or the Centerville National Bank and nothing was done which could have caused S.B.A. or the Centerville National Bank to justifiably rely to their prejudice and injury.

The elements of estoppel are well known and they have no application to this case. See Atlas Coal Co. v. Jones, 245 Iowa 506, 61 N.W.2d 633; Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 13 N.W.2d 310, 155 A.L.R. 346.

In this case, the accepting of the $8,600.-00 by Boss Hotel Company did not cause the Centerville National Bank or S.B.A. to change their position in reliance because their position was taken prior to that time and also there was nothing in the acceptance to rely on. Boss Hotel Company said they were not releasing the security. The acts, instead of being done in reliance on anything Boss Hotel Company did, were rather done in an attempt to secure their position with respect to a note they knew was not secured by a first mortgage.

In support of its claim of estoppel, S.B.A. asserts:

"It is further clear that the participation loan would not have been disbursed to the Anthonys, had the Boss Hotels Company stated initially that the Anthonys did not have title to property which was to secure repayment thereof * * *. The Boss Hotels Company has benefitted to the extent of $8,600.00 from the reliance by plaintiff and its conduct in accepting said amount as payment in full. They ought not be permitted to change their position to plaintiff's detriment."

On or about April 13, 1961, Centerville Hotel Company filed a petition for writ of attachment to enforce its landlord's lien. (The Centerville Hotel Company was a subsidiary which had actually been dissolved some seven years prior to this time.) This action was subsequently dismissed and is no longer in effect. S.B.A. is claiming that this amounted to an estoppel. S.B.A. is not purporting to make a claim under the doctrine of waiver or election of remedies. Estoppel is usually not available unless pleaded. Short v. Martin, 121 N. W.2d 154 (Iowa). Rule 8(c), F.R.Civ.P. In any event, the court will consider the estoppel. S.B.A. cites Snouffer & Ford v. City of Tipton, 150 Iowa 73, 129 N.W. 345. The court there said:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position incon-

418

sistent therewith to the prejudice of the adverse party."

That rule and the Snouffer case do not fit the present case because S.B.A. was not an adverse party and there was no prejudice to S.B.A.

S.B.A. cites North Side State Bank of Rock Springs, Wyo. v. Schreiber, 219 Iowa 380, 258 N.W. 690. That case did not involve estoppel by reason of an inconsistent position being taken in a judicial proceeding. That case rests on the theory of estoppel discussed in United States v. Merchants Mutual Bonding Company, supra, and has nothing to do with the present case. S.B.A. cites Newcomer v. Novak, 188 Iowa 646, 175 N.W. 37, rehearing overruled 176 N.W. 642; Stein v. McAuley, 147 Iowa 630, 125 N.W. 336, 27 L.R.A.(N.S.) 692; and Crawford v. Nolan, 70 Iowa 97, 30 N.W. 32. Those cases are based upon the doctrine of election of remedies and are no support for the application of estoppel. Election of remedies must be pleaded. Kuhl v. Hayes, 10 Cir., 212 F.2d 37; Bagwell v. Susman, 6 Cir., 165 F.2d 412. It was not pleaded and was not raised until defendant filed its brief approximately one month after the date of the trial. Actually, the doctrine is not raised expressly in the brief but these cases decided on the basis of that doctrine are cited as support for estoppel.

■ The difference between election of remedies and estoppel is that the doctrine of election of remedies does not always require for its application that the other party has acted and changed position. The court as a matter of grace will consider this theory. It has no application to the present case for several reasons. The Iowa court has always considered that the doctrine does not apply in absence of prejudice where the first remedy was dismissed and never went to trial. Mutual Surety Co. of Iowa v. Bailey, 231 Iowa 1236, 3 N.W.2d 627; Stein v. McAuley, supra; Buffalo Center Land & Investment Co. v. Swigart, 176 Iowa 422, 156 N.W. 701. In State v. Miller, 117 N.W.2d 447 (Iowa) and Swanson v. Baldwin, 249 Iowa 19, 85 N.

W.2d 576, 69 A.L.R.2d 249, the court said:

"It is well settled that one who seeks to assert a remedy to which he is not entitled is not thereby precluded from pursuing another remedy which may be available to him."

This is the position taken by the Restatement of Judgments, Section 65(2). See comment k.

■ Also, for the doctrine of election of remedies to apply, there must have been two concurrent but inconsistent remedies between which the parties had the right to elect. Boss did not have this choice. Courtney v. Courtney, 149 Iowa 645, 129 N.W. 52; Kefgen v. Coates, 365 Mich. 56, 111 N.W.2d 813. Also S.B.A. was not a party to the institution of the attachment proceedings. For these numerous reasons there was no election of remedies or estoppel based on it in this case. This is true even though in Iowa attachment may be a remedy which is inconsistent with asserting a reservation of title.

Sometimes there may be an election even though the suit has not gone to judgment if some benefit has been taken or some detriment suffered by the adversary. See Miller v. Hartford Fire Insurance Company, 251 Iowa 665, 102 N.W.2d 368; Kearney Milling & Elevator Co. v. Union Pacific Ry. Co., 97 Iowa 719, 66 N.W. 1059. This may be what S.B.A. means when estoppel is claimed. However, in the present case there was no benefit to Boss Hotel Company or detriment to S.B.A. arising from the attachment proceedings which were dismissed.

The court concludes that Boss Hotel Company is not estopped to claim that they reserved title to the chattels in question.

■ The reason that the parties are concerned about title is that in the stipulation they have agreed that once the priority statute, Title 31, Section 191, is applicable, this statute will defeat the common law priority of Boss Hotel Company, first in time and first in right, un-

less title was reserved in Boss Hotel Company. The parties did not stipulate what facts in this case brought the priority statute into operation or when in the course of events in this case the fact occurred which brought the statute into operation. As will be shown, however, either a reservation of title or a lien reduced to possession prior to the time the priority statute comes into operation will prevent the lien from being subdued by the priority statute. United States v. Vermont, 375 U.S. 940, 84 S.Ct. 351, 11 L.Ed.2d 271.

The parties argue the issue of whether title was reserved in the lessor on the theory that the priority statute does not apply to the property if title was reserved in the lessor. The court will decide this question although even if title was not reserved that fact is not determinative of this case, the reason being that the priority statute (and hence the right of S.B.A. to priority) did not come into existence until September 14, 1962. (The Anthonys committed the sixth act of bankruptcy on that date and no other act of insolvency in Section 191 was committed prior to that date.) This happened more than a year prior to the time the lessor had reduced its lien to possession and extinguished all the rights, title, and interests of the Anthonys.

The only contention that S.B.A. raises in arguing that the transaction was not a conditional sale type transaction is that the lessee had a right to substitute furnishings, equipment, and fixtures from time to time. The parties both contend that the lease is to be read in connection with the agreement for sale of lease and that the agreement is ambiguous and must be considered in its entirety. The court accepts this as correct. A right of replacement of the encumbered property is not customary in either a conditional sale or a chattel mortgage. Such an arrangement is usually found in a factor's lien type agreement. In the present case, there is no indication that any of the property was in fact replaced. Although the food and beverages on hand were sold to the An-

thonys, that is not at issue here. The property in issue is listed in the Centerville National Bank mortgage. Had the property been in fact replaced, probably the lien on the replaced property would have been a chattel mortgage. Courts, including the Iowa court, have held that a landlord's contract lien on property brought into the building by the tenant is usually a chattel mortgage, but that is not the fact in this case.

■ The lien in this case had all the usual characteristics of a conditional sale. It was originally the property of the vendor. It was not given to secure a pre-existing debt but rather to secure a purchase money debt owed directly to the vendor. It expressly provided for retention of title. It made provision for forfeiture. It made no provision for collecting a deficiency debt if the value of the forfeited property did not exceed the debt. Clearly, the intention of the parties was to effect a conditional sale and this should not be defeated by the inclusion of one provision which was never shown to have any actual effect or which was not actually used by the parties.

■ There is no prescribed form for a conditional sale contract. The rights and liabilities of the parties thereto, as in any other kind of a contract, must be determined by the language used and the intention deducible from the terms employed in the contract. Short v. Martin, supra. See also 56 A.L.R. 233; 148 A.L.R. 348; 52 C.J.S. Landlord and Tenant §§ 606–618.

■ Even if the agreement for lien did not effect a valid reservation of title, still Boss Hotel Company did on May 12, 1961, take possession of the security and validly extinguished all the right, title and interest which the Anthonys had in the property. This was more than a year prior to the time at which the priority statute came into operation.

On May 12, 1961, notice of forfeiture was put on record with the Appanoose County Recorder and two days after serv-

ice the Anthonys abandoned the hotel and the Boss Hotel Company took possession.

The Iowa law allows the chattel mortgage to be foreclosed according to the method stipulated in the agreement. One such method is the taking of possession intended as a foreclosure. See Sections 556.2 and 652.1, Iowa Code, I.C.A.; Beh v. Tilk, 222 Iowa 729, 269 N.W. 751; Howery v. Hoover, 97 Iowa 581, 66 N.W. 772; Wetmore v. Wooster, 212 Iowa 1365, 237 N.W. 430; Barnhart v. Hanford, 105 Iowa 116, 74 N.W. 742; Sylvester v. Ammons, 126 Iowa 140, 101 N.W. 782. The Iowa law on this subject is in accord with the general law. "A landlord's contract lien on the tenant's goods may be enforced by proceedings in equity, or where the contract so provides, by taking possession of the property." 52 C.J.S. Landlord and Tenant § 613. "A mortgage may be foreclosed by judicial proceedings, or, if such procedure is authorized, by sale without judicial proceedings or by a transfer of possession intended as a foreclosure. Where more than one method exists, the mortgagee may elect which he will pursue." 14 C.J. S. Chattel Mortgages § 362.

In a situation such as the present where the debt owed to Boss Hotel Company exceeded the value of the security, even if the foreclosure had not been according to the agreement, it would still terminate the interest of the mortgagor in default. See W. A. Jordan Co. v. Sperry Bros., 141 Iowa 225, 119 N.W. 692. However, in the present case the termination of the interest of the Anthonys was according to the agreement. If the instrument is a conditional sale, Boss Hotel Company as a matter of law had a right to foreclose in the manner in which they did. If the instrument was a chattel morgage, that right had to be provided for in the agreement in the manner in which it was provided. This action by Boss Hotel Company, at least as of that time, extinguished all the interest of the Anthonys and this happened before the priority statute came into operation. Thus, whether or not Boss Hotel Company had reserved title

prior to May 12, 1961, is not necessarily determinative but is an alternative reason for the conclusion reached in this case.

Also, since the action by Boss Hotel Company resulted in their lien being reduced to possession prior to the time the priority statute came into operation, title would not necessarily have to have been in Boss Hotel Company at that time. The court does, however, find that title was in Boss Hotel Company at that time.

The priority statute was not pleaded in this case but like in United States v. Latrobe Construction Company, 246 F.2d 357 (8th Cir.), it is being considered. Although the Supreme Court has always reserved final determination (see note 8 in United States v. Vermont, supra), it has always stated since 1817 in Thelusson v. Smith, 2 Wheat. 396, 15 U.S. 396, 4 L.Ed. 271, to June 1, 1964, in United States v. Vermont, supra, that if a lien has title reserved or is reduced to possession, such lien is not subdued by the priority statute. Unquestionably, the lien in this case was coupled with a reservation of title and/or it was reduced to possession. Also, the identity of the lienor, the amount of the debt, and the subject property were determined, and this is not being questioned.

The only question is at what point in time must the lien be reduced to possession or be coupled with title in order to escape being subdued by the priority statute. The Supreme Court has always discussed the problem by saying the right of preference accrues to the United States as of the time the acts are committed which brings the statute into play, and that prior to that time, the lien must be reduced to possession or be coupled with title. United States v. Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638; Illinois v. Campbell, 329 U.S. 362, 67 S. Ct. 340, 91 L.Ed. 348; Spokane County v. United States, 279 U.S. 80, 95, 49 S. Ct. 321, 73 L.Ed. 621; United States v. Waddill Co., 323 U.S. 353, 355–356, 65 S.Ct. 304, 88 L.Ed. 1560; Commonwealth of Massachusetts v. United States, 333 U.S. 611, 617, 68 S.Ct. 747, 92 L.Ed.

968; United States Mortgage & Trust Co. v. Deaver, 44 F.2d 913 (5th Cir.)

"Mere inability of the debtor to pay all his debts in the ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part." "In order to give the priority specified in section 3466 (Section 191), there must be a case of an insolvent debtor who makes a voluntary assignment of his property, or a case in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law or a case in which an act of bankruptcy is committed." United States v. Oklahoma, supra.

This court in refusing to grant summary judgment pointed out that the facts as to the application of this statute were unclear. The stipulation was then entered into. As pointed out, however, the parties did not stipulate what act brought in the statute or at what date this act occurred.

On September 14, 1962, the Anthonys committed the sixth act of bankruptcy, and assuming they were then or later became insolvent, the statute came into play as of that time. No other act of bankruptcy was committed. There was no voluntary assignment by the debtor and there was no absconding, concealed or absent debtor whose property was attached by law. The court concludes that the priority statute came into operation as of that time and gave S.B.A. preference over the property the debtor had at that time. For more than a year prior to that time the lien, conditioned title or mortgage had been reduced to possession, and title if it had ever been in the Anthonys was completely divested. In fact, all the interest the Anthonys ever had in the property had been divested.

In the present case, the security instrument of Boss Hotel Company was prior in time to the mortgage of S.B.A. There is good authority for the proposition that a mortgage, even if not reduced to possession or coupled with title, is not divested by the priority statute. See the cases cited in Southern Railway Company v. United States, 5 Cir., 306 F.2d 119. It is not necessary to decide the case on that point.

In the stipulation of the parties, they stated the issue in the following terms: "Furthermore, if Boss Hotel Company, the defendant, continued to hold title to the personal property, then the priority statute would not be applicable as the Anthonys would not, at any time, have held title to the property. On the other hand, if the Anthonys did hold title, then the chattel mortgage now held by the plaintiff (S.B.A.) would be superior to any claim of the defendant."

The court concludes that title to the property was always in Boss Hotel Company or its assignor and that further, even if it did not always have title reserved, any title which the Anthonys may have had was divested a considerable time prior to the time the statute applied and "the Anthonys would not, at any (relevant) time, have held title to the property."

The stipulation of the issues is somewhat unclear. The first two paragraphs appear to stipulate that as a matter of law if the title was not in the Anthonys at the time the mortgage was given to the Centerville National Bank, assignor of S.B.A., this mortgage was invalid by reason of not having been made by the title holder. Probably the law in such a situation would not declare the mortgage of no effect but would declare it a second mortgage. The court feels that S.B.A. did have a valid lien but that its priority did not attach in time to defeat the security instrument held by Boss Hotel Company.

The third paragraph of the stipulation of issues in effect raises the question of the application of the exception to the priority statute as outlined in the Supreme Court cases such as United States v. Vermont, supra. A reservation of title prior to the time the priority statute applies is only part of the exception. If the lien is reduced to possession, there is another exception. The stipulation of

issues does not mention this part of the exception. Apparently, the Government was not prepared to concede that reducing the security to possession would prevent it from being subdued by the priority statute but was willing to concede that if the debtor had no title to the security at the time the priority attached, the lien of *Boss Hotel Company* would not be subdued by the priority statute.

Due to the fact that the stipulation is ambiguous and no express concessions are made, the court is considering that neither party intended to concede any point of law.

The court finds that all the rights, title, and possession of the Anthonys had been surrendered to Boss Hotel Company prior to the time the priority statute applied and, alternatively, that title had never been in the Anthonys.

The court concludes the law to be that if title or possession is in the mortgagee or holder of a conditional sales security instrument prior to the time the facts occur which bring the priority statute into the case, then and in that event, this security instrument is not subdued by the priority statute. United States v. Vermont, supra; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; Thelusson v. Smith, supra.

Characterization of the lien as a matter of state law is not binding as the federal standard must be used. The fact that many state cases have been cited is an indication that the lien was characterized as a matter of state law. See United States v. Latrobe Construction Company, supra. The court in determining what constitutes a reservation of title and when the lienor has title or possession so as to achieve the necessary "specificity" has used the federal standard. As to whether or not an instrument is a conditional sales agreement and reserves title, the court has considered the general law as well as the state law. There is no federal standard as such on that point. The interpretation is consistent with federal policy. In determining that the interest and title, if any, could be divested by the forfeiture or foreclosure method which the security instrument provided, the court considered the general law as well as the federal law. Again, there is no federal rule as such but the interpretation given is consistent.

A number of the aspects of the priority statute are discussed in an article in 50 American Bar Association Journal, page 288.

Accordingly, this court concludes that plaintiff's cause should be dismissed and, accordingly, judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.